366 P.2d 826

Lester Joseph SCHARBACH, Plaintiff-Respondent,

v.

CONTINENTAL CASUALTY COMPANY, a corporation, Defendant-Appellant.

No. 9002.

Supreme Court of Idaho.

Dec. 11, 1961.

Felton & Bielenberg, Moscow, for respondent.

Cox, Ware, Stellmon & O'Connell, Lewiston, for appellant.

KNUDSON, Justice.

For the period of approximately five and one-half years prior to the date of trial (April 21, 1960) respondent and his wife occupied and were purchasing 127 acres, more or less, of farm land in Latah County. After taking possession of said property respondent pursued plans to engage in the dairy business and by September, 1958, had accumulated approximately 30 head of cattle, of which 18 or 20 were milch cows, with which respondent carried on his dairy farm business.

For approximately twelve years prior to September, 1958, respondent was also employed as an oil truck driver in the performance of which work he devoted an average of 8 hours per day, 5½ days per week. On September, 1, 1958, respondent reduced his oil truck driving work to three 8 hour days per week, which schedule continued until early April, 1959.

During September, 1958, an agent of appellant called upon respondent relative to purchasing insurance and as a result of the call respondent made application for a policy of insurance to be issued by appellant, in which application it is stated that respondent's occupation is "dairy". Subsequently, in consideration of the premium of $124.40, appellant issued and delivered to respondent its Senior Business and Professional Disability Policy, insuring respondent for, among other things, loss resulting from disability due to nonconfining sickness at a monthly rate of $100.00 for a maximum period of 24 months while respondent is wholly and continuously disabled and prevented from engaging in each and every duty pertaining to his occupation although not confined within the house. The effective date of said policy being August 26, 1958.

On March 31, 1959, respondent consulted his physician and was given a physical examination as a result of which respondent was shortly thereafter advised by his physician that he suffered a heart condition known as angina pectoris; that his condition would not permit the physical exertion associated with continuing in the dairy business and that he should dispose of his dairy herd. Upon being so advised by his doctor respondent discontinued his dairy business but continued to drive the oil truck part time. Thereafter, and early in May, 1959, respondent sold his dairy herd, retaining one or two cows for family use, and continued to a limited extent driving the oil truck.

Under date of April 22, 1959, respondent filled out and sent appellant a "Report of Claim" form which bears stamp of appellant's office showing that it was received at appellant's Portland, Oregon, office on April 23, 1959. Under date of August 11, 1959, another such "Report of Claim" was sent to appellant by respondent.

This action was commenced on August 6, 1959. Judgment by the court, sitting without a jury, in the sum of $1200.00 (as accrued benefits under the policy for the months of April, 1959 through March, 1960, both inclusive) together with interest and attorneys' fees, was entered in favor of respondent on August 12, 1960. From said judgment this appeal is taken.

A majority of the assignments of error can be summarized as challenging the sufficiency of the evidence to sustain the judgment entered. In considering this challenge an examination of the terms of the insurance policy involved and a review of the evidence is essential.

The policy insures respondent against "loss resulting from injury or sickness", to the extent specified therein. "Sickness" wherever used in the policy means "sickness or disease contracted and commencing after this policy has been in force for not less than thirty days after its effective date and resulting in loss covered by this policy". The effective date of the policy was August 26, 1958. Paragraph B of Part IV of the policy provides:

"Total Disability and Non-Confinement. When, as the result of sickness and commencing while this policy is in force or immediately following a period of disability for which indemnity is payable under Paragraph A of this Part the Insured is wholly and continuously disabled and prevented from engaging in each and every duty pertaining to his occupation although not confined within the house, the Company will pay periodically the Monthly Indemnity stated in the Schedule for the Period of such disability not to exceed as the result of any one sickness the period stated in the Schedule under

the caption 'Maximum Period Non-Confining Sickness Indemnity'."

The policy also provides that the company may decline renewal under any of the following circumstances:

"(a) nonpayment of premium on or before due date;

"(b) when the Insured ceases to be an employee of, a member of or an employee of a member of Idaho Milk Processors Assoc.;

"(c) when the Insured ceases to be actively employed or reaches the age of 70;

"(d) when the Company declines to renew all policies bearing number IP 11762AU issued to such employees, members and employees of members."

The appeal involves an interpretation of certain provisions of the policy and one question to be resolved is: what did the parties mean and intend by the words "his occupation" as used in the policy?

Appellant contends that at the time the policy was written respondent was actually engaged in three different occupations, dairying, farming and oil truck driving; that to recover under the policy here involved it must be proved that he is wholly and continuously disabled from performing any of the duties and obligations of each and all of the occupations he was engaged in at the time the policy was written.

Respondent contends that the policy is an "occupational disability" policy insuring respondent for loss resulting from disability to engage in a specified occupation and points out that such contention is supported by

(1) the language in the policy containing the phrase "his occupation" (Paragraph B of Part IV quoted above);

(2) the application (being a part of the policy) discloses respondent's occupation as dairyman;

(3) the option reserved by the company to refuse renewal when the insured ceases to be an employee of, or member of Idaho Milk Processors Association;

(4) The classification of the occupation for premium computation.

The trial court did not specifically determine if the insurance contract is an "occupational disability" policy or a "general disability" policy. However said court did find and conclude that respondent was entitled to recover under the policy since he became wholly and continuously disabled as pertaining to his occupation as a dairyman.

 In construing a contract the court will give effect to the language employed according to its usual, plain and ordinary meaning. Messinger v. Cox, 33 Idaho 363, 194 P. 473. In Webster's New Inter-

national Dictionary, Second Edition, the word "occupation" is defined as:

"That which occupies, or engages, the time and attention; the principal business of one's life; vocation; business. * * * (Syn.) One's occupation is that to which one's time is devoted, or in which one is regularly or habitually engaged."

In Black's Law Dictionary, Fourth Edition, occupation is defined as:

"That which principally takes up one's time, thought, and energies; especially, one's regular business or employment; also whatever one follows as the means of making a livelihood."

■ The record is clear that during the years respondent was building up his dairy herd and dairying facilities with a view of engaging in the dairying business as a full time operation, he also engaged in driving an oil truck. However, on the date the application for insurance was made (September 17, 1958) respondent had diminished his truck driving activity to three 8-hour days per week and was devoting the remainder of his time to the operation of his dairy farm. Respondent testified that on the days he drove truck, after September 1, 1958, he started work at four o'clock in the morning and it was usually 9:30 or after at night when he finished, devoting all but 8 hours of such days to his dairy work.

The evidence is uncontradicted that at the time application was made respondent was in apparent good health; that he was a supplier of milk to Sanitary Dairy at Moscow, Idaho; that appellant's agent had procured from the manager of said Dairy the names of producers who were supplying said Dairy with milk, and that respondent's name was among the names so procured; that said agent stated to respondent that he (agent) was calling only on dairymen for the purpose of selling an insurance policy to them; that the application was filled in by appellant's agent while at respondent's farm home. There is no claim or contention that any deception or misrepresentation was indulged in on the part of respondent.

We do not agree with appellant's contention that respondent was, at the time the application was made, engaged in a separate occupation of farming. The evidence is convincing that whatever farming was being carried on by respondent at that time was in conjunction with and as a part of his dairy business.

It is common knowledge that a person sometimes engages in two or more employments or businesses during a working period to provide a livelihood and it must be presumed that such fact was known to appellant. If it is the intention of appellant that the holder of a policy such as is here involved would not be entitled to benefits

unless he is wholly and continuously disabled from engaging in *any occupation* it would require only simple wording to make such intention known to its policy holders. The policy here under consideration does not so provide.

■ In connection with appellant's contention that the language of the policy is susceptible to the construction contended for by it, it should be noted that this Court has long followed the rule that "[if] a clause in an insurance policy [be] susceptible of more than one construction, the one most favorable to the insured will be adopted". Sweaney & Smith Co. v. St. Paul Ins. Co., 35 Idaho 303, 206 P. 178, 182; Maryland Casualty Co. v. Boise Street Car Co., 52 Idaho 133, 11 P.2d 1090; Penrose v. Commercial Travelers Ins. Co., 75 Idaho 524, 275 P.2d 969.

The evidence abundantly supports the trial court's conclusion that the occupation referred to in, and intended to be covered by, said policy was respondent's occupation as a dairyman and none other.

Appellant claims the court erred in failing to find and specify the length of time that respondent was engaged in each of the claimed occupations of oil truck driving, farming and dairying prior to March, 1959. There is no merit to such contention since the principal question presented and to be decided is: what occupation is referred to and covered by the policy?

■ Appellant assigns as error the finding of the trial court "that on the 31 day of March, 1959 plaintiff became wholly and continuously disabled and prevented from engaging in each and every duty pertaining to his occupation". It is contended that such finding is against the evidence. Without attempting to mention all of the evidence introduced supporting such finding attention is called to the following: respondent testified that during the early months of 1959 and particularly during March he experienced pains in his chest; on March 31st he consulted his doctor by whom he was given a physical examination; shortly following such examination the doctor informed respondent that he was suffering from a form of heart trouble known as angina pectoris. Dr. Baird testified regarding his examination of respondent as follows:

"I informed him that these symptoms, as we found them on that particular day, March 31, 1959, were such that he had to make a decision as to whether he wanted to live or die; that the situation as it existed in his heart would not permit the physical exertion associated with continuing in the dairy business, and I advised him on that day to dispose of his cows."

Respondent further testified as follows:

"Q. After the doctor advised you, what duties, if any, did you do in re-

gard to your dairy business? A. I just quit doing anything in regard to the dairy business.

"Q. You just quit all at once, did you? A. Yes.

"Q. And it was on the advice of your doctor? A. Yes, it was.

"Q. You say you hired someone and your wife did some of the chores connected with the dairy business. Did you continue to operate your dairy business through them? A. Yes, until the 1st of May, I believe it was.

"Q. You did this until the 1st of May, as far as your dairy was concerned? A. Before the 1st of May a neighbor of mine approached me and wanted to buy the cows and I sold the cows to him.

"Q. And thereafter did you conduct any dairy operations: A. No. One cow I kept for my family, but there was no dairy operation. That was just a family cow.

"Q. Now, prior to seeking the doctor's advice, did you plan to sell your dairy herd? A. No."

■ The requirement of the policy that the insured be "wholly and continuously disabled" does not contemplate that a state of absolute helplessness must exist before recovery can be had. The disability contemplated is that disability which prevents insured from engaging in the occupation covered by the policy and not some other vocation which he might be able to follow after the disability. Identical language was considered by this Court in Penrose v. Commercial Travelers Ins. Co., supra, from which the following is an excerpt [75 Idaho 524, 275 P.2d 972]:

"From the record there is no doubt but that the affliction of respondent wholly and continuously disabled him from performing any and every duty pertaining to his occupation as a farmer; while he might be able personally to do trivial and minor things, which neither required much time nor physical exertion, and through others, acting under his supervision and direction, accomplish heavier tasks requiring physical effort, which ordinarily he could well have done himself prior to the affliction, does not mean that he is not disabled within the terms and intent of the policy; this is especially so when the things which he could not do constituted substantially all the duties of his occupation as a farmer. Great Northern Casualty Co. v. McCollough, 96 Ind.App. 506, 174 N.E. 103."

■ The test is whether the insured was by reason of his sickness prevented from doing all the substantial acts required of him in carrying on his occupation covered by the policy. Such questions are for de-

termination by the trier of fact. LaBarge v. United Insurance Co., 209 Or. 282, 303 P.2d 498, 306 P.2d 380. Since the finding of the trial court is supported by substantial competent evidence it will not be disturbed. Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116.

■ Appellant complains that the evidence does not support the court's finding that "plaintiff's heart trouble resulted from dairying and not from trucking or farming". Evidence was introduced tending to show that respondent ceased doing anything in regard to the dairy business immediately after being advised to do so by his doctor. Thereafter, on May 26, 1959, he was re-examined by his doctor who stated that respondent, at that time, showed "a very marked improvement" in his condition, yet respondent had continued to drive the oil truck during the interim. Respondent was again examined by his doctor on July 29, 1959, at which time respondent's heart showed a very definite improvement and the doctor found a like improvement in respondent's condition as a result of an examination made on February 20, 1960. The finding complained of is supported by competent evidence. However, there is merit to appellant's contention that the court erred in finding that respondent "will continue in the future to be disabled within the meaning of said policy of insurance". Under the decree benefits were allowed from the date of disability to the date of trial (from April 1, 1959 through March, 1960) while the policy provides for a maximum period of 24 months of disability. The period of disability depends upon recovery, if any such occurs, sufficient to enable respondent to resume his occupation of dairying.

There is no merit to appellant's contention that due proof of loss was never made to appellant. Claim forms, furnished by appellant, were upon two occasions, April 22, 1958 and August 11, 1959, filled in and signed by respondent and were received by appellant on April 23, 1959 and August 26, 1959, respectively, and appellant made such investigation of the claim as it considered necessary.

■ Appellant contends that the court erred in awarding attorneys' fees to respondent on the ground that "no one testified as to any sum being reasonable in the premises". One of the firm of attorneys representing respondent testified that the firm was employed to represent respondent in this action upon a contingent fee basis providing that if the case was tried they (respondent's attorneys) would receive a fee equal to 40% of the amount recovered. No evidence was offered challenging the reasonableness of such fee. The trial court properly allowed a fee of $420.00.

Respondent has regularly filed a motion for allowance of $500.00 attorneys' fees

for services rendered upon this appeal. Considering the amount involved and the fee allowed by the trial court we find that an award of $300.00 attorneys' fee for services performed in this Court is reasonable. The motion will be granted in the amount of $300.00 and the trial court is directed to enter judgment in favor of respondent and against appellant in the amount of $300.00 for services by respondent's attorneys on this appeal.

Finding no reversible error and that the judgment is supported by competent evidence, the judgment is affirmed. Costs to respondent.

TAYLOR, C. J., SMITH and McFADDEN, JJ., and HYATT, District Judge, concur.