(627 P.2d 344)

No. 51,561

VERLA FAYE ANDERSON, *Appellee,* v. NATIONWIDE LIFE INSURANCE COMPANY, *Appellant.*

Opinion filed May 1, 1981.

*John O. Sanderson,* of Atherton, Hurt & Sanderson, of Emporia, for the appellant.

*H. Neil Roach* and *Robert D. Kroeker,* of Roach and Mellinger, of Emporia, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and WILLIAM M. COOK, District Judge, assigned.

SWINEHART, J.: This is an appeal from a decision of the District Court of Lyon County sustaining the plaintiff's motion for summary judgment and entering judgment in favor of plaintiff for $50,000, for attorney fees under K.S.A. 40-256, and for costs.

Two issues are raised on appeal: (1) whether the trial court erroneously granted summary judgment in favor of the plaintiff, and (2) whether the trial court abused its discretion by awarding the plaintiff attorney fees pursuant to K.S.A. 40-256.

Plaintiff, Verla Faye Anderson, and decedent, William V. Anderson, were legally married at the time of the decedent's death on February 23, 1977. On August 1, 1976, defendant Nationwide Life Insurance Company issued to plaintiff a group accident insurance policy made available to the plaintiff as an employee of MBPXL Corporation in Wichita (policy No. HLG-8894, certificate No. 312). Defendant totally prepared the insurance contract. When plaintiff applied for the policy, she was not required to submit any financial information concerning herself or her spouse. The policy insured plaintiff's husband in the amount of $50,000. All premiums due under the policy were timely paid in full.

Three conditions had to be fulfilled to validate the policy upon

the death of plaintiff's spouse: (1) plaintiff had to be an "insured eligible person" as defined in the policy; (2) decedent had to be an "eligible dependent" as defined in the policy; and (3) decedent's death had to be a "covered accident" as defined in the policy. The parties agree that the first and third conditions were met. In the policy, " 'Eligible Dependent' as used herein means the Insured Eligible Person's Spouse who is not the principal wage earner in the family unit (consisting of the Insured Eligible Person, such spouse, and their dependent children) and who is not legally separated from the Insured Eligible Person." No definition was provided for the term "principal wage earner."

Sometime before April· 6, 1977, defendant received written notice of plaintiff's claim and demand for payment. However, defendant refused to pay under the terms of the policy on the ground that the decedent was not an eligible dependent spouse. On or about April 6, 1977, defendant retained Equifax Claims Investigators to investigate whether the decedent was in fact an eligible dependent within the terms of the policy. Throughout the investigation, the defendant attempted to contact plaintiff but defendant's representative received no response from her until June 19, 1977. On July 11, 1977, plaintiff supplied defendant with IRS tax forms she and the decedent had filed. Plaintiff's gross income for the year 1976 was $11,803.86, and for 1977, $3,900. In 1976 decedent had a gross income of $12,209.72, and in 1977, $3,097.51. In a letter dated July 22, 1977, plaintiff's attorney was informed that defendant was denying the plaintiff's claim because, based upon information it had received, decedent was ineligible for the dependent coverage.

In response to a letter from plaintiff's counsel, defendant later informed plaintiff that her claim was being denied because her husband did not meet the definition of eligible dependent when plaintiff applied for dependent coverage on July 9, 1976. Defendant's decision was based upon decedent's earnings as disclosed in his 1976 federal tax return. Defendant invited plaintiff to provide any additional information if defendant's was incorrect. No further communication ensued between the parties until this action was filed on June 27, 1978.

The trial court granted plaintiff's motion for summary judgment. It found that the definition of principal wage earner contained in the definition of eligible dependent was ambiguous, and concluded that the decedent was not the principal wage earner in

plaintiff's family. Since the defendant insurance company employed ambiguous language in the policy and never requested financial information from plaintiff until after decedent's death, the court determined that attorney fees were warranted.

Defendant first argues that the trial court erroneously granted summary judgment in favor of plaintiff. Specifically, defendant contends that the trial court erred in concluding that the insurance policy was ambiguous. Even if, for the sake of argument, the contract was ambiguous, defendant asserts that the trial court applied erroneous rules of construction in determining whether or not the decedent was the principal wage earner in plaintiff's family. Finally, it alleges that material questions of fact exist as to the amount of earnings of the parties during the effective period of the policy.

Plaintiff concurs with the trial court's conclusion that the contract was ambiguous and that the policy should be construed in favor of the plaintiff, thereby entitling her to the judgment of $50,000.

The parties' disagreement revolves around whether or not the decedent was an eligible dependent spouse under the terms of the policy. As noted earlier, the decedent clearly met two of the three elements of the definition. Whether the third condition was fulfilled, that is, whether the decedent was the principal wage earner in the family unit, is controverted. The insurance policy does not contain a definition of principal wage earner, nor was the term defined for the plaintiff when she applied for the insurance policy or when the defendant informed her it was denying her claim.

"[T]he construction and effect of a contract of insurance is a matter of law to be determined by the court." *Scott v. Keever,* 212 Kan. 719, 721, 512 P.2d 346 (1973). Therefore, the district court was required to examine the document and determine the appropriate construction thereunder. The general rule that insurance policies are to be construed in favor of the insured and against the insurance company arises only if there exists a rational basis for construing the policy itself. "That is, the contract must contain provisions or language of doubtful, ambiguous or conflicting meaning, as gathered from a natural interpretation of its language. [Citations omitted.]" *Casey v. Aetna Casualty & Surety Co.,* 205 Kan. 495, 498-499, 470 P.2d 821 (1970). Ambiguity may

be found when, after the application of the relevant rules of interpretation to the face of the insurance contract, the words intended to express the meaning and intent of the parties may be construed to reach more than one possible meaning. *Western Casualty & Surety Co. v. Budig,* 213 Kan. 517, 519, 516 P.2d 939 (1973).

"If the language when given its everyday commonly accepted meaning is clear and specific in presenting the subject matter at hand, the objective to be accomplished, the burdens assumed, and the benefits to be enjoyed or received, then the terms of the insurance policy cannot be said to be doubtful of meaning or conflicting in terms. Under these circumstances, courts are not at liberty to indulge in a construction that would give an unnatural meaning to the language in order to accomplish results that could not be shown to have been in the minds of the parties. [Citations omitted.]" *Casey v. Aetna Casualty & Surety Co.,* 205 Kan. at 499.

In undertaking this analysis, the test is "not what the insurer intends the words of the policy to mean, but what a reasonable person in the position of the insured would have understood them to mean." 205 Kan. at 499.

Defendant contends that the meaning of principal wage earner is clear and does not give rise to an ambiguity, triggering invocation of the general rule that provisions of the contract must be construed in favor of the insured. The defendant proposes several possible definitions of eligible dependent and principal wage earner which are based upon statutory and secondary source definitions. It then concludes that primary breadwinner is a reasonable definition. Plaintiff argues that this definition still does not resolve the interpretation of principal wage earner. For example, she suggests that she is not certain whether gross or net income is to be considered; whether full-time or part-time work is relevant; whether wage includes unemployment compensation, workmen's compensation, governmental assistance, etc. She also argues that if the amount of income is the determinative factor, it still is not clear on the face of the policy over what time period such computation is to be made, *i.e.,* the effective dates of the policy, the taxable year in which the policy was obtained as urged by the defendant, or some other time span. She also points out the difficulties in determining the principal wage earner that could result when the policy had been renewed for several years. As will be discussed below, the trial court did not attribute much

significance to defendant's failure to include information about the time period that should apply.

Defendant's resort to statutes and secondary sources for assistance in defining what the terms principal wage earner and eligible dependent mean is some indication of the problems it encountered in settling upon a definition. It would be difficult to find that the trial court could have applied the natural meaning to these terms in order to avert a finding of ambiguity. We find that the definition of principal wage earner is not clear. Accordingly, the trial court's conclusion that the insurance policy was ambiguous is sustained.

As an ambiguity exists in this policy, the interpretation most favorable to the insured must prevail. *Fancher v. Carson-Campbell, Inc.,* 216 Kan. 141, 146, 530 P.2d 1225 (1975); *Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, 449 P.2d 477 (1969). "Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured." *Goforth v. Franklin Life Ins. Co.,* 202 Kan. at 417.

The trial court extensively discussed the bases for its interpretation of the policy. In deciding that the plaintiff's claim should be honored by the defendant insurance company, the trial court chastised the defendant for not providing plaintiff with information at the time she applied for the policy to guide her in assessing whether or not the decedent was an eligible dependent spouse. If eligibility was dependent upon who earned the most money, the court found that it would have been incumbent upon the insurer to require the necessary financial information at the time of application for the policy, and to also provide for obtaining needed information if the financial status of the parties changed during the effective period of the policy. Thus, after the claim was made, the insurer unfairly concluded that decedent was the principal wage earner on the basis of the couple's 1976 tax returns when defendant had not earlier informed plaintiff that it would use this method to establish eligibility.

The trial court further found that the decedent was not the principal wage earner and specifically refused to ground its decision on the precise dollar amounts earned by the parties either during the 1976 taxable year or during the life of the policy.

The court noted that there were a number of tests that could be employed to determine principal wage earner, but the defendant failed to apprise plaintiff of the one it intended to utilize. The court seemed to be acknowledging the realities of modern family life when it stated:

"And I find that in many family units today there is not a principal wage earner, as such, and that one applying for insurance under this policy under that definition [eligible dependent] could very well feel that the other spouse was not the principal wage earner in the family unit and this can go on and on. If one's spouse was engaged in a high income kind of employment for a few months a year and was out of work the balance of the year, there are all kinds of possible, hypothetical situations one can imagine in which the question based upon dollars alone would not enlighten one as to who is the principal wage earner in the family. So, I do find that those provisions are ambiguous and the definition is open to question and I find, further, that in this particular contract that the definition on its face would seem to certainly include the decedent  .  .  .  the insured applying for insurance could very well honestly feel that her husband was not the principal wage earner in the family unit because they both earned approximately the same amount of money."

While the amount of gross income earned by each of the parties may be one relevant factor in determining whether decedent was an eligible dependent, we do not find that it is controlling as defendant urges. Therefore, although there is some dispute as to the amounts earned by plaintiff and decedent during the effective date of the policy, this question is not material as there was other sufficient evidence to support the finding of the trial court, and accordingly, summary judgment in favor of plaintiff was properly entered.

The decision of the trial court finding that an ambiguity existed in the insurance policy and interpreting that policy in favor of the plaintiff should be affirmed.

Defendant next contends that the trial court erroneously awarded plaintiff attorney fees pursuant to K.S.A. 40-256 principally on the basis that there was a bona fide dispute between the parties as to whether or not the decedent was an eligible dependent within the meaning of the contract. Plaintiff asserts, however, that she did everything required under the policy, i.e., she properly applied for the insurance policy, made all premium payments, and timely submitted written proof of loss. The defendant did not attempt to define principal wage earner until plaintiff made a claim for her husband's death.

The trial court awarded attorney fees to plaintiff on the grounds

that it was the defendant which drafted the insurance policy and failed to define the crucial terminology, which failed to obtain necessary financial information at the time the plaintiff applied for the policy, and which received premiums from the plaintiff. Only after the claim was filed did defendant determine that the meaning of eligible dependent spouse was contingent upon which spouse earned the most money during the 1976 taxable year.

K.S.A. 40-256 authorizes the trial court in an action against an insurance company to award plaintiff a reasonable sum for attorney fees "if it appears from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss." The insured bears the burden of proving by a preponderance of the evidence that the insurance company refused to pay "without just cause or excuse." *Thompson Transport Co. v. Middlestates Construction Co.,* 195 Kan. 172, 403 P.2d 999 (1965); *Salt City Business College, Inc. v. Ohio Cas. Ins. Co.,* 4 Kan. App. 2d 77, 602 P.2d 953 (1979). *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, 597 P.2d 1080 (1979), summarizes the general rules applicable before attorney fees may be assessed under K.S.A. 40-256. It first cites *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 470 P.2d 756 (1970), as follows:

" 'Generally speaking, it is a question for the district court as the trier of the facts to determine whether an insurance company has refused to pay the full amount of an insured's loss "without just cause or excuse" thereby subjecting itself to payment of an attorney's fee under K.S.A. 1968 Supp. 40-256. . . .

" 'It has been held that whether an attorney's fees are to be allowed depends upon the facts and circumstances of each particular case. (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P.2d 937; *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34.) Where the only issue between the parties is a factual dispute with respect to coverage under an insurance policy, and the insurer has refused to pay the full amount of the insured's loss for such reason, we are of the opinion the phrase "without just cause or excuse" as used in K.S.A. 1968 Supp. 40-256, means a frivolous and unfounded denial of liability. However, if there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay "without just cause or excuse." And whether there was any reasonable ground for contesting the claim depends upon circumstances existing when payment is withheld or liability is declined. It is not necessarily determined by the outcome of the ensuing litigation. (*Wolf v. Mutual Benefit Health & Accident Association,* supra [188 Kan. 694].) The statutory penalty is not to be imposed merely for the reason that it turned out at the trial in the district court, there was, in reality, no reason for denial of liability. The question is, how did the

matter appear before the trial as judged by a reasonable and prudent man seeking to determine the facts of the controversy which it was his duty in good faith to investigate.' pp. 564-565.

"See also *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973).

". . . Prior to such 'refusal', the insurance company has a duty to make a good faith investigation of the facts. *Lord v. State Automobile and Casualty Underwriters*, 208 Kan. at 234; *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. at 565." *Brown v. Combined Ins. Co. of America*, 226 Kan. at 226-27.

If the claim involves a good faith legal controversy, especially one that is a matter of first impression in this jurisdiction, there may be just cause or excuse for insurer's refusal to pay a claim. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 599, 528 P.2d 134 (1974); *Sloan v. Employers Casualty Ins. Co.*, 214 Kan. 443, 521 P.2d 249 (1974).

The parties obviously disagree with respect to the meaning of the term eligible dependent. The insurer may have been at fault in not requiring financial information at the time plaintiff applied for the contract, in not defining principal wage earner in the contract, and/or in not totally explaining why it refused to cover the loss. Despite the delay, inconvenience and possible mental anguish the defendant's actions may have caused the plaintiff, we conclude that this is not the kind of situation that warrants assessing attorney fees against the defendant insurer and that the court erroneously awarded plaintiff attorney fees.

Judgment as to attorney fees is reversed.

Affirmed in part and reversed in part.