686 P.2d 95

Eugene **RYAN**, on his behalf and on behalf of other interested underwriters at Lloyd's London; Phoenix Assurance Company, Ltd. and Ennia and Co., Plaintiffs - Counter - Defendants - Appellants,

v.

**MOUNTAIN STATES HELICOPTER, INC.**, a corporation, dba St. Anthony Flying Service and Gary Petersen, Defendants - Counter - Claimants - Respondents.

No. 14176.

Court of Appeals of Idaho.

June 12, 1984.

R. Vern Kidwell, Holden, Kidwell, Hahn & Crapo, Idaho Falls, and William R. Hickman, Reed, McClure, Moceri & Thonn, P.S, Seattle, Wash., for plaintiffs-counter defendants-appellants.

Gregory P. Meacham and Alan E. Barber, argued, Petersen, Moss & Olsen, Idaho Falls, for defendants-counter claimants-respondents.

BURNETT, Judge.

This appeal presents a question of insurance coverage. The issue is whether the deletion of certain exclusions from an insurance policy narrowed the scope of a remaining exclusion. For reasons explained below, we hold that the remaining exclusion was unaffected. Accordingly, we vacate a summary judgment in which the district court found coverage that otherwise would have been excluded.

I

It is axiomatic that on review of a summary judgment, we determine whether there are genuine issues of material fact and, if not, whether the prevailing party below was entitled to judgment as a matter of law. I.R.C.P. 56(c). In this case, the essential facts are undisputed. Mountain States Helicopter, Inc., is engaged in the business of "crop dusting"—applying chemicals to farm fields from aircraft. Idaho law requires all persons and companies in this business to be licensed. As a condition for issuing a license, the Idaho Department of Agriculture requires the commercial applicator to file proof of insurance covering damage that might result if chemicals should drift to property owned by someone other than the farmer who hired the applicator. This type of insurance commonly is called "drift coverage."

To procure its insurance, Mountain States contacted an agent working for Eugene Ryan, an underwriter who represented several insurance companies. Although the precise dialogue between Mountain States and the agent may be disputed in some respects, it is uncontroverted that Mountain States sought insurance beyond

the customary "drift coverage." An amended version of the underwriter's standard policy was issued to Mountain States.

The standard policy, before amendment, granted broad coverage—embracing any damage existing from aerial applications—but then carved out certain exceptions by a series of exclusions. Two of these exceptions were set forth in the exclusions section of the policy.

THIS POLICY DOES NOT APPLY:

. . . .

4. to injury to or destruction of any crops, pastures, trees or tangible property to which aerial application is deliberately made whether in error or not;

5. with respect to bodily injury to any person or persons or injury to or destruction of crops, pastures, trees or animals, insects or fish in or upon the land belonging to a farmer, grower, or owner for whom the aerial application is being performed by the Insured. . . .

A third exclusion was added to the policy by endorsement:

NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

. . . .

(b) pollution and contamination of any kind whatsoever.

The policy actually issued to Mountain States deleted two of these exclusions. Exclusion No. 5, concerning damage to property of the farmer who hired the applicator, was deleted by a typewritten endorsement which stated, "It is hereby understood and agreed that Exclusion 5 is deleted from the Policy Provisions." Exclusion No. 1(b), relating to pollution and contamination, was deleted by striking over its language with typewritten X's. Exclusion No. 4, pertaining to deliberate applications, remained in the policy issued to Mountain States.

Mountain States later was sued by one of its farmer-customers. The farmer, who also sued the manufacturer of the chemical applied to his crop, alleged that Mountain States had sprayed his alfalfa crop with a contaminated product; that shortly thereafter the alfalfa began to deteriorate; and that the plants ultimately died or became deformed.

The underwriter, citing exclusion No. 4, denied coverage under the policy issued to Mountain States. The underwriter then brought this action, seeking a declaration that he and his insurance companies had no liability to Mountain States upon the farmer's claim. As noted above, the district court found coverage and granted summary judgment to Mountain States.

II

It is readily apparent that the three exclusions contained in the standard policy, before amendment, were overlapping. Any one of the exclusions could have been invoked to defeat coverage of a claim by a farmer-customer whose own crops had been damaged as a result of deliberate application by Mountain States of chemicals which turned out to be polluted or contaminated. That is precisely the claim made here. The overlapping scope of these exclusions is depicted below, "x" representing the instant claim.

**Illustration A**

The issue now before us focuses upon the area of overlap. The district court in effect ruled that Exclusion No. 4 had been

narrowed by deletion of the other two exclusions, removing the claim from the scope of any exclusion. This result is depicted by Illustration B.

**Illustration B**

However, on appeal the underwriter argues that Exclusion No. 4 was not narrowed by deletion of the other exclusions. Rather, the exclusion remained in full force, encompassing the instant claim and defeating coverage. This result is depicted by Illustration C.

**Illustration C**

▮▮▮▮ Our analysis begins by noting the standard by which insurance policies are construed. The Idaho Supreme Court has held that policies shall be interpreted in the same manner as contracts in general. Where the language is clear and unambiguous, the coverage of a policy must be determined from the plain meaning of its own words. *E.g., Miller v. World Insurance Co.,* 76 Idaho 355, 283 P.2d 581 (1955). Conversely, if the policy is ambiguous, coverage must be construed in favor of the insured. *Shields v. Hiram C. Gardner, Inc.,* 92 Idaho 423, 444 P.2d 38 (1968). To ascertain the meaning of an ambiguous policy, the reasonable expectations of the insured may be considered; but those expectations do not override the plain terms of an unambiguous policy. *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981).

▮▮▮▮ Whether a contract is ambiguous is a question of law which may be determined by an appellate court. *Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App. 1982). In this case, we believe the policy issued to Mountain States unambiguously makes an exception to coverage, under Exclusion No. 4, when "application is deliberately made." It is undisputed that the insured deliberately applied the allegedly harmful chemicals. Under a plain reading of the policy, there is no coverage.

▮▮▮▮ Mountain States contends that our primary function, when interpreting a contract, should be to determine the intent of the parties. This contention is correct, as far as it goes. However, such intent is derived in the first instance from the language of the contract itself, unless that language is ambiguous. Mountain States urges that an ambiguity was created when Exclusion No. 5, relating to occurrences "upon the land belonging to a farmer ... for whom the aerial application is being performed by the Insured," was deleted while retaining Exclusion No. 4 regarding "deliberate" acts. This argument implicitly assumes that material deleted from an insurance policy may be considered in determining the existence of an ambiguity. The assumption is fallacious. The material deleted may be strong evidence of the parties' intent. *E.g., Woods v. Insurance Co. of North America,* 38 Cal.App.3d 144, 113 Cal.Rptr. 82 (1974); *One Thousand Bags of Sugar v. Harrison,* 53 F. 828 (3d Cir.

1893). But such extrinsic indicia of the parties' intent may be considered in construing a contract only if the language remaining in the contract, after deletions, is ambiguous. As stated above, we find no such ambiguity. We reject Mountain States' circular reasoning that intent should be ascertained from material deleted, and that such intent should be compared to the otherwise plain meaning of a contract, to determine whether an ambiguity exists.

Our treatment of material deleted from the contract in this case is consistent with the general rule governing construction of endorsements to insurance policies:

> The proper construction of an endorsement to an insurance policy requires that the endorsement and the policy must be read together. But if an endorsement extinguishes a policy provision or declares it void and of no effect, such provision cannot be considered in construing the policy.

2 R. LONG, THE LAW OF LIABILITY INSURANCE § 16.09 (rev. ed. 1983) (footnotes omitted).

This case differs markedly from two others recently decided by our court. In *U-Haul v. Armstrong*, 107 Idaho 31, 684 P.2d 1008, (Ct.App.1984), we considered deleted material in determining the parties' intent, *after* finding the contract to be ambiguous. In *Manduca Datsun, Inc. v. Universal Underwriters Insurance Co.*, 106 Idaho 163, 676 P.2d 1274 (Ct.App.1984), we took note of coverage not elected by the insured under a policy which offered a menu of coverage choices. In that case the coverage alternatives were integral parts of the policy and were related to each other. In contrast, the exclusions in the present case are self-contained and independent, although overlapping. We conclude, as a matter of law, that the policy issued to Mountain States excluded from coverage the occurrence which led to the farmer's claim.

By overturning the summary judgment, upon a question of contract construction, we do not necessarily preclude Mountain States from obtaining equitable relief upon the facts presented. Mountain States has alleged that it sought—and was assured by the underwriter's agent that it had received—coverage providing full protection against claims by its farmer-customers. If the underwriter's agent made such a representation, the underwriter might be estopped to deny coverage. *See Wardle v. International Health & Life Insurance Co.*, 97 Idaho 668, 551 P.2d 623 (1976). *Cf. Foremost Insurance Co. v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981) (insurance company bound by oral contract without regard to written terms of actual policy when it failed to deliver policy). Moreover, where there has been a mutual mistake, equity may empower a court to reform an insurance contract to conform to the parties' true intent. *See Niagara Fire Insurance Co. v. Allied Electrical Co.*, 319 So.2d 594 (Fla.App.1975); *Ferguson v. Belcher & Son*, 230 La. 422, 88 So.2d 806 (1956).

These equitable forms of relief turn upon questions of fact unsuitable for disposition on appeal. Consequently, we vacate the judgment below, rather than reversing it, and instruct the district court to consider other grounds for relief asserted by Mountain States. Costs to appellants, Ryan, et al. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.