716 P.2d 1321

**Stanley G. KROMREI,
Plaintiff-Appellant,**

v.

**AID INSURANCE COMPANY (MUTUAL), Defendant-Respondent.**

**No. 15838.**

Supreme Court of Idaho.

Jan. 29, 1986.

Rehearing Denied April 23, 1986.

---

Terry C. Copple of Davison, Copple, Copple & Copple, Boise, for plaintiff-appellant.

Peter J. Boyd, Todd J. Wilcox, and Robert M. Tyler, Jr. of Elam, Burke & Boyd, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

Stanley Kromrei initiated this action seeking to recover damages from AID Insurance Company pursuant to his comprehensive liability insurance policy. The district court granted summary judgment in favor of AID's and Kromrei appeals.

On February 1, 1982, Kromrei purchased a business auto insurance policy from AID Insurance Company insuring three specified vehicles. Three months later, on April 30, 1982, Kromrei's sixteen-year-old son was killed in an automobile collision while riding as a passenger in an automobile driven by one Flo Gregory. The accident occurred as a result of Gregory's negligence. Two other passengers in Gregory's vehicle were killed in the accident and the driver of the other vehicle involved was seriously injured.

Shortly thereafter, litigation was instituted against Gregory for negligently causing the death of Kevin Kromrei and the other two passengers in her vehicle and for compensation for the injuries suffered by the driver of the other vehicle. Gregory carried liability insurance through Farmer's Insurance Company with a $50,000.00 per accident limit. Farmer's interplead its policy limit into court. All of the claimants settled their claims against Gregory by equally dividing the insurance proceeds, resulting in a $14,174.81 settlement to Kromrei.

Kromrei then initiated this action in an attempt to recover additional damages pursuant to the uninsured motorist coverage in the AID policy. Both parties moved for summary judgment.

Kromrei's policy defined an uninsured motor vehicle to include a land motor vehicle

"b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged *but their limits are less than the limit of this insurance ....*" (Emphasis added.)

Thus, to come within the scope of the uninsured motorist endorsement, the limit of liability on Gregory's insurance would have to be less than the limit of Kromrei's uninsured motorist coverage. Gregory's insurance contained a $50,000 per accident limit. Kromrei's insurance provided for $20,000 of uninsured coverage for each of the three insured vehicles. Therefore, the only way that Kromrei could recover under the uninsured motorist provision of his policy was if the policy contained three $20,000 coverages which could be combined for a total coverage of $60,000.

The district court refused to allow Kromrei to stack his coverage and granted AID's motion for summary judgment. The court based its decision on three factors: (1) The insurance policy expressly limited uninsured motorist coverage to $20,000 per accident regardless of the number of vehicles insured. (2) Kromrei was charged a reduced premium for the second and third vehicles due to the decreased risk that all three vehicles would be on the road at the same time. (3) The Idaho uninsured motorist statutes did not appear to mandate a different result. Kromrei appeals from that decision.

■ Because we agree with the district court that the language of the insurance policy at issue expressly limited coverage to $20,000 per accident regardless of the number of vehicles insured, we hold that summary judgment was proper in this case. We find it unnecessary to address the so-called stacking question in regard to the premium structure of the insurance policy or the provisions of the Idaho uninsured motorist statute as we agree with the district court that the insurance policy, on its face, contained only one $20,000 coverage.

■ This case was before the district court on cross-motions for summary judgment based on the same set of facts. Summary judgment is appropriate only when there is no genuine issue as to any material fact. I.R.C.P. 56(c). The mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact. *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979). However, where, as in the present case, both parties have moved for summary judgment based upon the same evidentiary facts and the same issues and theories, they have effectively stipulated that there is no genuine issue of material fact and summary judgment is therefor appropriate. *Bob Daniels and Sons v. Weaver,* 106 Idaho 535, 540, 681 P.2d 1010, 1015 (Ct.App.1984); *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982).

■ The issue on appeal is the same issue that was before the district court: whether there were three uninsured motorist coverages under Kromrei's policy merely because three vehicles were insured thereunder. This Court has long recognized that insurance policies are contracts of adhesion, not subject to negotiation between the parties, and that any ambiguity must be construed most strongly against the insurer. *Moss v. Mid-America Fire and Marine Ins.,* 103 Idaho 298, 300, 647 P.2d 754, 756 (1982). However, where the policy language is clear and unambiguous, there is no occasion for construction and coverage must be determined according to the plain meaning of the words employed. *Ryan v. Mountain States Helicopter, Inc.,* 107 Idaho 150, 153, 686 P.2d 95, 98 (Ct.App. 1984); *Casey v. Highlands Ins. Co.,* 100 Idaho at 509, 600 P.2d at 1391.

"It is the function of the Court to construe a contract of insurance as it is written, and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that

plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Unigard Ins. Group v. Royal Globe, Etc.*, 100 Idaho 123, 128, 594 P.2d 633, (1979) (quoting *Miller v. World Ins. Co.*, 76 Idaho 355, 357, 283 P.2d 581, 582 (1955)).

Given its plain and ordinary meaning, the policy here at issue specifically provides that regardless of the number of covered vehicles, the total amount of uninsured motorist coverage for a single accident is limited to $20,000.

The declaration section on the first page of the policy states that $20,000 is the total amount of uninsured motorist coverage for any one accident or loss. In addition, the limit of liability clause in the uninsured motorist endorsement of the policy expressly provides as follows:

"E. OUR LIMIT OF LIABILITY.

"1. *Regardless of the number of covered autos*, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORIST INSURANCE shown in the declarations." (emphasis ours).

We agree with the district court that the plain language of the insurance contract prohibits stacking. The policy specifically provides that Kromrei was entitled to only $20,000 in uninsured motorist coverage regardless of the number of covered vehicles.

Accordingly, the decision of the district court is affirmed.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The majority confines itself to deciding whether Mr. Kromrei's insurance policy precludes the stacking of such policies. In so doing, the majority refuses to review one of the grounds upon which the district court relied in reaching its decision—that Idaho's uninsured motorist statute does not mandate allowing insured individuals the option of stacking their policies if they so choose. The majority also argues that Mr. Kromrei's insurance policy precludes the stacking of policies. Because the majority refuses to decide the most critical issue here—whether Idaho law invalidates purported anti-stacking provisions in insurance policies—and also because the majority incorrectly interprets a most ambiguous statement regarding insurance coverage as prohibiting any stacking, I dissent.

### I.

I.C. § 41–2502 requires each automobile insurance policy to include uninsured motorist protection. The intent of the legislation is to protect the injured person. *Id.* It should not be gainsaid then, that any attempt to negate that requirement and intent is invalid, being in violation of law. *Whitney v. Continental Life and Accident Company*, 89 Idaho 96, 104–05, 403 P.2d 573, 579 (1965) ("If a contract is void as against *public policy*, the court will refuse to enforce it and will leave the parties in the identical situation in which it finds them...."); *Worlton v. Davis*, 73 Idaho 217, 222–23, 249 P.2d 810, 814 (1952).

Preventing people from stacking their insurance policies violates the intent of I.C. § 41–2502. The facts of this case clearly reveal why this is so: At the time of the accident, Idaho law required uninsured motorist protection in the amount of $20,000.00. *See* I.C. § 49–1521. The insurance policy of the tort-feasor provided $50,000.00 of coverage. This amount was divided up among the various injured parties, with Mr. Kromrei receiving $14,174.81. The Aid Insurance Company argues, and the majority agrees, that that is all Mr. Kromrei is entitled to, *even though that amount is almost $6,000.00 below the statutory amount the legislature thought*

people were entitled to receive when the tortfeasor is uninsured. The fact that the tortfeasor's overall policy provides an amount larger than Mr. Kromrei's policy is of little consolation or benefit to him. The $14,1174.81 simply has not "protected" him as I.C. §§ 41–2502 and 49–1521 intended that he be protected. Allowing stacking would permit insured individuals to receive this statutory amount at a minimum, and further protect themselves from serious financial hardship.

The majority's opinion constitutes judicial reinterpretation of these statutes, and renders those statutes impotent. Applying the reasoning of the majority reveals how this is so.

Assume that the tort-feasor in this case hit a privately owned bus with 50 people in it. Presumably, the tort-feasor's policy limit of $50,000.00 would be interplead, as it was here, and the proceeds divided up. Each victim would receive, therefore, a total of $1,000.00, even though their medical expenses may amount to many times that amount. Does the majority really mean to say that the legislature intended such people to be restricted to that amount when it enacted I.C. § 41–2502? The language of the statute speaks otherwise. The intent of I.C. § 41–2502 was to protect "persons insured ... who are legally entitled to recover damages ... because of bodily injury ..." At the very least, these statutes should be applied as they were intended to be applied, and Mr. Kromrei should be able to rely upon his insurance policies, which he paid for, to recover up to the $20,000.00 coverage Idaho law states is the minimum which a person can be covered.

More reasonable to my mind is the argument that these statutes prohibit anti-stacking clauses. The reasoning of the Florida Supreme Court on this point, and in interpreting a statute similar to Idaho's, is compelling:

The statute requires that each such policy cover any bodily injury loss of the insured or insureds caused by the negligence of any uninsured motorist. The statute provides that such coverage shall be included in any automobile liability policy covering 'any motor vehicle' in not less than the limits described in Section 324.021(7) 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... resulting therefrom.' However, this coverage is obviously not restricted to the limits of F.S. Section 324.021(7), F.S.A., for one vehicle when more than one automobile is covered.... The statute admits of no authority in the insurer by a provision in the policy to limit coverage on the presumed basis that the uninsured motorist would only have covered himself with the minimum auto liability coverage required under F.S. Section 324.021(7), F.S.A. The determinant of the amount of coverage is the total which the insured purchases pursuant to the authority of the statute and not that which the insurer otherwise attempts to limit by a provision in the policy.

An insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premiums. It is useless and meaningless and uneconomic to pay for additional bodily injury insurance and simultaneously have this coverage cancelled by an insurer's exclusion. The premium rates are standard and uniform on a per car basis. The insured's full protection cannot be whittled away by exclusions or limitations which presuppose he only intended to cover himself on the presumed basis of single car auto liability coverage had the uninsured motorist purchased the same. Compare Dyer v. Nationwide Mutual Fire Ins. Co. (Fla.1973), 276 So.2d 6, and particularly see Employers Liability Assurance Corp., Ltd. v. Jackson (1973), 289 Ala. 673, 270 So.2d 806.

*We must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist."*

Tucker v. Government Employees Ins. Co., 288 So.2d 238, 241 (Fla.1973) (emphasis added).

Other courts have reached similar conclusions: *See, e.g., Kemp v. Allstate Ins. Co.,* 183 Mont. 526, 601 P.2d 20, 24 (1979); *American States Ins. Co. v. Milton,* 89 Wash.2d 501, 573 P.2d 367, 368 (1978); *Allstate Ins. Co. v. Maglish,* 94 Nev. 699, 586 P.2d 313, 314–15 (1978); *Federated American Ins. Co. v. Raynes,* 88 Wash.2d 439, 563 P.2d 815, 820 (1977); *Welch v. Hartford Cas. Ins. Co.,* 221 Kan. 344, 559 P.2d 362, 367 (1977); *Keel v. MFA Ins. Co.,* 553 P.2d 153, 155–56 (Okla.1976); *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538, 542–45 (Mo.1976); *Great Central Ins. Co. v. Edge,* 292 Ala. 613, 298 So.2d 607, 608–09 (1974); *Werley v. United Services Auto. Ass'n.,* 498 P.2d 112, 118–19 (Alaska 1972); *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258, 263 (1970).

In *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 375, 565 P.2d 564, 568 (1977), this Court, per Justice Donaldson, said the following:

The question ... becomes whether we should allow the Sloviaczeks to *stack the respective policies to effect a recovery equal to their loss.*

The same question was raised in *Smith v. Pacific Auto Ins. Co.,* 240 Or. 167, 400 P.2d 512 (1965) and *Werley v. United Services Automobile Association,* 498 P.2d 112 (Alas.1972). *Both courts specifically rejected the insurer's argument that the plaintiff should not be permitted to stack benefits under several policies. We do likewise.... [A plaintiff is] entitled to recover an amount equal to his loss up to the combined limits of all of the policies.*

That same reasoning and holding should apply here as well. That conclusion becomes ever more persuasive when I.C. § 41–2502 is considered. For those reasons, I would hold that the anti-stacking provisions found here are invalid, their being in violation of public policy as spelled out by the legislature.

## II.

The majority holds that the anti-stacking provision here is clear and unambiguous. I disagree. The limitation in question states the following:

"E.  OUR LIMIT OF LIABILITY.

"1.  Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORIST INSURANCE shown in the declarations."

The proper standard in interpreting insurance contracts was recently restated in *Chancler v. American Hardware Mutual Insurance Company,* 109 Idaho 841, 847, 712 P.2d 542, 548 (1985), as follows:

Idaho law governing the interpretation of insurance policies was set forth well by Justice Shepard in *Moss v. Mid-American Fire and Marine Ins. Co.,* 103 Idaho 298, 300, 647 P.2d 754, 756 (1982):

This Court has long recognized that *insurance policies are contracts of adhesion, not subject to negotiation between the parties, and hence must be construed most strongly against the insurer.* Abbie Uriguen Olds. Buick, Inc. v. United States Fire Ins. Co., 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Ins. Co.,* 92 Idaho 537, 447 P.2d 14 (1968); *Scharbach v. Continental Cas. Co.,* 83 Idaho 589, 366 P.2d 826 (1961); *Rollefson v. Lutheran Brotherhood,* 64 Idaho 331, 132 P.2d 758 (1942). *The provision at issue today is one which seeks to exclude the insurer's cover-*

*age. Such an exclusion must be strictly construed in favor of the insured.* Hahn v. Alaska Title Guaranty Co., 557 P.2d 43 (Alaska, 1976); Mission Ins. Co. v. Nethers, 119 Ariz. 405, 581 P.2d 250 (Ariz.App.1978); State Farm Mutual Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); Northwestern Nat. Cas. Co. v. Phalen, 182 Mont. 448, 597 P.2d 720 (1979); Conner v. Transamerica Ins. Co., 496 P.2d 770 (Okl.1972); McDonald Industries, Inc. v. Rollins Leasing Corp., 26 Wash. App. 376, 613 P.2d 800 (1980). *See also* Bonner County v. Panhandle Rodeo Ass'n Inc., 101 Idaho 772, 620 P.2d 1102 (1980); Farmers Ins. Group v. Sessions, 100 Idaho 914, 607 P.2d 422 (1980). *Hence, the courts have held that the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage.* Goforth v. Franklin Life Ins. Co., 202 Kan. 413, 449 P.2d 477 (1969); Anderson v. Nationwide Life Ins. Co., 6 Kan.App.2d 163, 627 P.2d 344 (1981); Harvey's Wagon Wheel, Inc. v. MacSween, 96 Nev. 215, 606 P.2d 1095 (1980); ... [*See also*] Farmers Ins. Group v. Sessions, 100 Idaho 914, 607 P.2d 422 (1980) (holding that an exclusionary clause in an insurance contract that lends itself to different interpretations is ambiguous and must be construed in a manner most favorably to the insured). (Emphasis added.)[1]

Applying that standard here, I would hold that the policy in question is ambiguous and, construing it strongly against Aid Insurance, also hold that Mr. Kromrei's attempt to stack is not prohibited by the policy. The reason for this is simple. Nowhere in the policy is there a limit on the amount of *underinsured* motorist coverage. The only limitation on stacking appears with regard to *uninsured* motorist protection, which is inapplicable to this case because it is uncontradicted that the tortfeasor had insurance coverage, albeit insufficient insurance protection to pay the substantial claims asserted against her. The insurance company's argument that stacking is prohibited by the policy is therefore totally without merit.

Furthermore, assuming *arguendo* that the words "uninsured" and "underinsured" are synonymous as used in the policy, Item Two of the Declaration Sheet of the policy states that the uninsured motorist insurance is $20,000 and that such amount is "the most we will pay for any one accident or loss." *Nowhere in the insurance policy, however, does it state that if the insured pays for three separate underinsured motorist coverages he cannot obtain the benefits of those coverages.* The above-quoted language applies to circumstances where the insured purchases one uninsured motorist coverage and one loss is sustained. It would, in these circumstances where one premium is paid, be inappropriate for the insured to claim multiple coverage simply because six family members were killed and he had paid for only one underinsured and uninsured motorist coverage. The policy is silent concerning facts such as are involved in the instant litigation where the insured purchased *three separate* underinsured motorist coverages.

The incompleteness of the policy and the alleged anti-stacking provision at issue here are enough to rule against Aid Insurance Company. In the words of this Court in *Chancler*, "if the parties 'intended to limit the liability of the insurer by exclud-

---

1. The majority also states that this is the proper standard to follow. P. 1323. The majority does not state, however, that this is *not* the standard the district court applied.

The district court stated only that ambiguities should be resolved in favor of the insured. It did not state that insurance contracts are contracts of adhesion, and that they are to be strictly construed against the insurer. This is a more stringent standard than that which was employed by the district court.

ing coverage ... the insurer could have so provided.'" *Chancler, supra,* p. 848, 712 P.2d p. 549, quoting *Cooling v. United States Fidelity and Guaranty Co.,* 269 So.2d 294, 297–98 (La.Ct.App.1972) *cert. denied,* 272 So.2d 373 (La.1973).

Aid Insurance did not so provide. Instead, it took Mr. Kromrei's *three* premiums, arguing now, however, that Mr. Kromrei is not entitled to the coverage for which he paid. The fairness of this result is on par with that which a majority of this Court did in *Juker v. American Livestock Insurance Co.,* 102 Idaho 644, 637 P.2d 792 (1981), wherein the majority denied an insured individual the coverage he had paid for by holding in effect that the indemnity policy which he had on his horse was a life insurance policy on a horse and not a policy which insured Juker against the loss of his horse. I do not believe a "reasonable person in the position of [Mr. Kromrei] would have understood the language to mean what Aid Insurance now argues here. *Corgatelli v. Globe Life & Accident Insurance Co.,* 96 Idaho 616, 620, 533 P.2d 737, 741 (1975) (Donaldson, J., dissenting). Accordingly, I would reverse the district court with directions that Mr. Kromrei be entitled to receive the payments due him on all of the insurance policies which he purchased and paid for.