(No. 7283.  May 4, 1946.)

E. K. KOON, FRANK BARMETTLER, AMERICAN NA-
TIONAL BANK, and PUBLISHERS PRESS ROOM
AND BINDERY COMPANY, a Colorado corporation,
Plaintiffs-Respondents, v. C. A. BOTTOLFSEN, ED-
WIN M. HOLDEN and L. E. GLENNON, Defendants-
Appellants.

[169 P. (2d) 345.]
Rehearing denied June 12, 1946.

Frank Langley, Attorney General, and P. J. Evans and J. R. Smead, Assistant Attorneys General, for appellants.

Walter H. Anderson for respondents.

GIVENS, J.—Appellants, under Chapter 103 of the 1943 Session Laws, page 199, as an emergency act effective February 27, 1943, entered into a contract June 23, 1943, with respondent Koon, doing business as Courtright Publishing Company, for the publication of a code in six volumes. The

other respondents are sub-contractors and a financing assignee.

Section 4 of the statute in part provides:

"* * *; that said publishing company shall have said code printed, published, bound and ready for delivery on or before July 1, 1944."

March 1944, the Courtright Company secured from the commission an extension of time to some undisclosed date subsequent to July 1, 1944. Thereafter, the exact date not being given, but evidently prior to October 1944, respondents delivered one thousand units of Volume I of the Code to the office of the Secretary of State. November 7, 1944, the Company asked for a second extension of time from October 1, 1944, to January 1, 1945. The commission denied this application November 25, 1944. The application was thereafter renewed by the Company and apparently no further official action was taken in regard thereto by the commission.

No further volumes were then completed or since offered for delivery and further work was suspended pending the determination of this suit, instituted by respondents to obtain a declaratory judgment to the effect that the above provision in Section 4 was directory and not mandatory; that the commission therefore has authority to grant extensions of time. The delays in the production were asserted to be due to war conditions affecting employment of labor.

The Attorney General's office, representing the commission, urges the statute is mandatory.

The learned trial court held that the statute was not mandatory—hence this appeal by the commission.

A justiciable case within the purview of our declaratory judgment statute is thus presented.

Coordinately construing all parts of the statute, there are these internal evidences that the language was mandatory and not directory: First, the mandatory language used in Section 4; second, the composition of the commission as set forth in Section 1 and Section 6, namely, "the present Governor of the State of Idaho," thus designating the spe-

cific individual, not just the holder of the office, with a limited term, Section 33-203, I.C.A., for the biennium 1943-1944, the then "present Governor" had official duties to perform as such.

"Upon certificate of the foregoing Commission that such compilation has been completed and published, the Governor shall make a proclamation announcing its publication, and from and after such proclamation said compilation shall be in force and shall be received in all the courts and by all judges, public officers, commissions and departments of the state government as evidence of the statute law of the State of Idaho, and as an authorized compilation of the statutes and codes of Idaho. Said compilation shall be known by such name as may be determined by the foregoing Commission." (Section 6, 1943 Session Laws, p. 202.)

While the then "present Governor" might have been re-elected, the thought expressed is clear that the legislature intended that particular individual Governor—not whoever might be the incumbent—should perform the official duties in connection with the code, perforce during his then term. The legislature had to recognize that the term of office of governor was for only two years. After its expiration, he could not officially function as governor, yet it was as *governor* he had to authenticate the codes.

Third, that the legislature authorized the inclusion only of the enactments of the 27th session of the legislature. While the statute does not prohibit the inclusion of subsequent sessions, if the legislature had contemplated the work was to extend beyond the biennial period and include subsequent sessions, it would have used other language under the doctrine that inclusio unius est exclusio alterius, hence only the session laws of 1943 were to be included, *Poston v. Holler*, 64 Ida. 322 at 330, 132 P. (2d) 142, and *Meader v. Unemp. Comp. Div.*, 64 Ida. 716 at 722, 136 P. (2d) 984, thus indicating the language in Section 4 was mandatory.

Likewise, Senate Concurrent Resolution No. 6,[1] page 396,

---

[1](S.C.R. NO. 6)
"A CONCURRENT RESOLUTION
"DIRECTING THE SECRETARY OF STATE TO DELIVER A SET· OF THE IDAHO CODE ANNOTATED AND A COPY OF EACH

and House Concurrent Resolution No. 12,[2] page 406, 1943 Session Laws, clearly indicate that the 1943 codification authorized by Chapter 103 (H.B. 138) supra, was to be completed within the time specified.

OF THE SUBSEQUENT SESSION LAWS TO AND INCLUDING THE 1943 SESSION LAWS ANNOTATED, TO EACH MEMBER OF THE TWENTY-SEVENTH SESSION OF THE LEGISLATURE OF THE STATE OF IDAHO.

"WHEREAS, Section 65-808, Idaho Code Annotated, provides for the distribution of the statutes and session laws of the legislature by the Secretary of State when he is called upon so to do by the legislature; and

"WHEREAS, the Secretary of State now has in his possession 125 sets of the Idaho Code Annotated 1932, together with the Session Laws to and including the 1941 issue properly annotated; and

"WHEREAS, House Bill No. 138 of the Twenty-seventh Session of the Idaho Legislature provides for the recodification of the Idaho laws; and

"WHEREAS, there will be no further use for the 1932 Code when the codification under House Bill No. 138 . of the Twenty-seventh Session of the Legislature is completed;

"NOW, THEREFORE, BE IT RESOLVED, that the secretary of State be and is hereby directed to deliver to each member of the Twenty-seventh Session of the Idaho Legislature a set of the Idaho Code Annotated 1932, annotated up to date, together with a copy of all session laws issued since Idaho Code Annotated to and including the laws of the 1943 Session of the Legislature reserved for the use of the members of the Legislature under the provisions of Senate Concurrent Resolution No. 11, Chapter 213, Session Laws of 1931. Provided, that the Secretary of State shall not require the return of any set of the Idaho Code Annotated, or of the session laws hereinbefore mentioned delivered to the members of the Legislature[5] pursuant to this Resolution and the receipt therefore shall be a sufficient accounting for the same by the Secretary of State.

Passed Senate February 27, 1943.
Passed House February 27, 1943."

1943 Session Laws, p. 396.

[2]"(H.C.R. NO. 12)
"A CONCURRENT RESOLUTION
"PROVIDING THAT EACH MEMBER OF THE HOUSE OF REPRESENTATIVES AND OF THE SENATE OF THE STATE OF IDAHO BE FURNISHED FREE OF COST A COMPLETE SET OF THE COMPILED, ANNOTATED AND PUBLISHED

Fourth, Section 7 contemplates the Code was to be used by the next succeeding session of the legislature or the 28th; otherwise, all acts of the 28th session amending or repealing existing laws would necessarily have had to refer to the 1932 code or intervening session laws, which would have created confusion, and necessitated further and additional publication.

Counsel contends *In re Overland Co. v. Utter*, 44 Ida. 385, 257 P. 480, compels a holding that Section 4 is directory and not mandatory. That case construed a statute authorizing the county commissioners to sit as a board of equalization with the provision that they * * "must complete such business and adjourn as a board of equalization on the third Monday of July, * * *."

██ The court stated: "If the history of legislation in this state clearly shows that the legislature intended that words in a statute should be construed as directory rather than mandatory, courts will not be limited in their construction of a statute to its form, but will rather look to its substance." Then reviewed the revenue statutes subsequent to 1863 and concluded that the "third Monday of July" was

CODES AND STATUTES OF THE STATE OF IDAHO UPON THE COMPLETION OF RECODIFICATION AS PROVIDED IN HOUSE BILL NO. 138, PASSED AT THE TWENTY-SEVENTH SESSION OF THE LEGISLATURE OF THE YEAR 1943.
"WHEREAS, It has been provided by House Bill No. 138, passed at the 27th session of the legislature of the year 1943 that there shall be a compilation, annotation and publication of the codes and statutes of the State of Idaho, together with other laws and matters as specified in said bill.
"NOW, THEREFORE, BE It Resolved by the House of Representatives, the Senate concurring, that the Secretary of State be and he is hereby directed to furnish and deliver to each member of the House of Representatives and the Senate a complete set of such code, statutes and other laws referred to in said bill, without cost to such members, as soon as practicable after the same have been completed and delivered to the Secretary of State as provided in said House Bill No. 138.

Passed House February 27, 1943.
Passed Senate February 27, 1943."
1943 Session Laws, p. 406.

not an ultimate and fatal deadline, but that * * * "To carry out the intention of the legislature the provision of the statute with reference to the time of adjournment should receive reasonable construction, and a reasonable construction would seem to be that, although a time is fixed for the adjournment of the board, time is not of the essence of the statute. *We do not wish to be understood as holding that a county board of equalization might meet at any time or continue in session for an indefinite period.* * * *" (Emphasis ours.)

Adopting the above historical criterion, sole declared basis for holding the statute therein construed to be directory, we find upon examination that there have been a number of statutes authorizing code revisions, all conclusive that it was not only the legislative intent, but the practice and compliant conduct of the various code commissions that the several compilations should be and were completed within the biennial period of the authorization, or extended by specific legislative enactment.[3]

■ "We must accept the statutes as we find them and construe them as they read, where they are plain and unambiguous, and are not permitted to apply rules of construction in the absence of ambiguity." (*Burnham v. Henderson,* 47 Ida. 687 at 691, 278 P. 221.)

■ That appellants out of abundant leniency granted an unauthorized extension of time, does not change the re-

[3]1874-75 session of the Territorial Legislature on page unnumbered, but the equivalent of 868(c), approved January 15, 1875, frontis piece February 1, 1876.

1885 Session Laws, page 132, December 8, 1884 to February 5, 1885; 1887 Rev. Statutes, pp. 4, 58, 884; 20th Joint Resolution 14th Territorial Session.

1899 Session Laws, page 342; page CXXI Idaho Code Annotated, 1901 Session Laws, page 57; page CXXVII Idaho Code Annotated; 1903 House Journal p. 158; House Concurrent Resolution No. 8.

1907 Session Laws, page 178, certificate dated July 1, 1908, on page 3; 1909 Session Laws, pages III-VI Idaho Code Annotated of 1909.

1917 Session Laws, page 241, certificate dated July 1, 1918, pages III & IV, Compiled Laws; 1919 Session Laws, pages 4 and 197.

1931 Session Laws, page 415, Chapter 213; Certificate in Vol. 1, 1932 Idaho Code Annotated, pages III-V and Frontis Piece Vol. IV.

strictive and limiting provisions of the statute; all parties being bound thereby and charged with the knowledge thereof. (*Deer Creek Highway Dist. v. Doumecq Highway Dist.*, 37 Ida. 601 at 610, 218 P. 371; *A. C. Frost and Co. v. Coeur d'Alene Mines Corp.*, 61 Ida. 21, 98 P. (2d) 965.)

The foregoing analysis of the statute herein and the appropriate historical legislation leads inevitably to the conclusion that the legislature intended the codification was to be in complete and final form, ready for the commissioners' consideration thereof by July 1, 1944.

If the legislature did not intend that the publication was to be complete by that date, the insertion of the date clause was utterly meaningless and potentially misleading. (*Lammers v. Anderson et al.*, 65 Ida. 71, 139 P. (2d) 482 at 484.)

Judgment is therefore reversed.

Ailshie, C.J., and Budge, J., and Stevens and Porter, D. JJ., concur. Stevens and Porter, D.JJ., sat in place of Holden and Miller, JJ., who deemed themselves disqualified and did not sit or participate.