829 P.2d 528

STATE of Idaho and Idaho State University, Plaintiffs–Respondents,

v.

CONTINENTAL CASUALTY COMPANY, Defendant–Third Party Plaintiff–Appellant,

v.

COMPASS INSURANCE COMPANY, Third Party Defendant–Respondent.

No. 18944.

Supreme Court of Idaho, Boise, January 1991 Term.

March 31, 1992.

Rehearing Denied May 21, 1992.

Hall, Farley, Oberrecht & Blanton, Boise, and Peterson & Ross, Chicago, Ill., for defendant-third party plaintiff-appellant. Michael P. Tone argued.

Cosho, Humphrey, Greener & Welsh, Boise, for plaintiffs-respondents. Howard Humphrey argued.

BOYLE, Justice.

In this insurance coverage dispute the State of Idaho brought this action against Continental Casualty Company seeking declaratory relief and a money judgment for coverage under the terms of a Board of Education liability (BEL) insurance policy issued to Idaho State University (ISU) for the year 1981. In its action, the State of Idaho, for itself and on behalf of Idaho State University (ISU) seeks recovery for payments made by the Bureau of Risk

Management (BRM) in defending and settling employment discharge, tort and civil rights claims in *Hale v. Walsh,* 113 Idaho 759, 747 P.2d 1288 (Ct.App.1987).

At the time in question, Compass Insurance Company (Compass) also provided insurance coverage to ISU and the State of Idaho.[1] Compass paid BRM $150,000.00 for a policy holder's release with respect to the *Hale* claim, and BRM used a portion of these funds to reimburse ISU for defense costs it had incurred. Compass was joined in this action as a third party defendant by Continental which claimed Compass had paid less than its share of the *Hale* claim.

Continental, BRM and ISU all filed motions for summary judgment. The trial court denied Continental's motion in its entirety and granted summary judgment in favor of BRM and ISU. In addition, on its own motion, the trial court entered summary judgment in favor of Compass because it viewed Continental's action against Compass as being moot.

Although several issues are raised on appeal, the issue we find dispositive is whether BRM and ISU are entitled as a matter of law to a money judgment for expenses incurred in the defense and settlement of the Hale claim.

A motion for summary judgment is to "be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c); *McCoy v. Lyons,* 120 Idaho 765, 820 P.2d 360 (1991); *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37 (1990).

When considering an appeal from a motion for summary judgment, our standard of review is the same as the standard used by the trial court in passing on the motion for summary judgment. *McDonald v. Paine,* 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic,* 105 Idaho 509, 670 P.2d 1294 (1983). Accordingly, our task is to apply the aforementioned rules to the record before us and determine whether there exists a genuine issue as to any material fact and whether ISU was entitled to judgment as a matter of law. In making this determination, we are required to look to the totality of the record including motions, affidavits, depositions, pleadings and exhibits, and not to isolated portions of the record. *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986).

In the instant case, the trial court granted summary judgment in favor of ISU and against Continental regarding its contractual obligations under the BEL insurance policy it issued to ISU. It is well established that the rights and remedies of parties to an insurance contract are determined by the terms contained in the insurance policy, *see Kootenai County v. Western Casualty & Sur. Co.,* 113 Idaho 908,

---

1. This coverage was arranged by the BRM pursuant to I.C. § 67–5773 which provides in pertinent part:

   **[67–5773] 65–5773. Powers and duties— Risk management.—**(1) The administrator of the division of insurance management shall:

   (a) Determine the nature and extent of needs for insurance coverage of all kinds, other that life and disability insurances, as to risks and property of all offices, departments, divisions, boards, commissions, institutions, agencies and operations of the government of the state of Idaho, the premiums on which are payable in whole or in part from funds of the state.

   (b) Determine the character, terms, and amounts of insurance coverages required by such needs.

   (c) Within funds available therefor from each respective office, department, division, board, commission, institution, agency or operation with respect to coverage to be provided to it, negotiate for, procure, purchase, and have placed or continued in effect all such insurance coverages as may reasonably be obtainable, whether from insurers duly authorized to transact insurance in this state or under the surplus line law.

   (d) Administer all such coverages on behalf of the insured, including making and settlement of loss claims arising thereunder. The administrator, with the advice of the attorney general, may cause suit to be brought with respect to any such coverage or loss.

750 P.2d 87 (1988), and because an insurance policy is a contract, it must be construed in the same manner as other contracts. *See Miller v. Farmers Ins. Co. of Idaho*, 108 Idaho 896, 702 P.2d 1356 (1985); *Anderson v. Title Ins. Co.*, 103 Idaho 875, 655 P.2d 82 (1982). Accordingly, when determining the respective rights of the parties to a policy of insurance, we look to the actual provisions contained therein.

■ The record before us indicates that ISU was the sole insured party under the Continental policy. Neither the State of Idaho nor BRM are named insured in the policy and they are not the same legal entity as ISU which enjoys its own independent legal status. Idaho State University is a separate "body politic and corporate, with its own seal and having the power to sue and be sued in its own name." I.C. § 33–3003.[2] In *Dreps v. Board of Regents*, 65 Idaho 88, 139 P.2d 467 (1943), this Court interpreted art. 9 § 10 of the Idaho Constitution[3] and defined the independent legal status of the University of Idaho. In *Dreps*, the Court held that the University of Idaho is not a "department of state government or a subordinate to the legislature." 65 Idaho at 96, 139 P.2d at 471. In *State v. State Bd. of Educ.*, 33 Idaho 415, 196 P. 201 (1921), the Court interpreted the same constitutional provision and held that the University of Idaho

> is not subject to the control or supervision of any other branch, board or department of the state government, but is a *separate entity*, and may sue and be sued, with the power to contract and discharge indebtedness, with the right to exercise its discretion within the powers granted, without authority to contract indebtedness against the state, and *in no*

*sense is a claim against the regents one against the state.* (Emphasis added.)

33 Idaho at 429, 196 P. at 205.

Article 9 § 10 of the Idaho Constitution, which created the University of Idaho, is similar to I.C. § 33–3003, which created Idaho State University. In enacting I.C. § 33–3003, the legislature clearly intended ISU to have an independent legal status. As a separate legal entity, ISU is the sole named insured in the Continental policy. The State of Idaho, not being a named insured and being a different legal entity from ISU, has no claim under the Continental policy.

■ As the trial court properly noted, Continental's obligation under the policy did not include a duty to defend ISU in any litigation that might arise. Rather, Continental was merely required to indemnify ISU for any amount the University was required to pay if the claim qualified as a covered loss. The applicable provision of the Continental policy provides:

> Loss shall mean any amount which the Assured or School District are legally obligated to pay, including, but not limited to, any amounts which the School District may be required to pay to an Assured, for a claim or claims made against the Assured for a Wrongful Act and shall include but not be limited to damages, judgments, settlements and costs, costs of investigation and defense of legal actions
>
> . . . .

In order for ISU to prevail against Continental it must show that it has incurred a loss or paid a claim which Continental is obligated to cover under the insurance poli-

---

2. **33–3003. Body politic and corporate—Board of trustees.—** The Idaho State University is hereby declared to be a body politic and corporate, with its own seal and having power to sue and be sued in its own name. The general supervision, government and control of the Idaho State University is vested in the state board of education, which shall act as the board of trustees of the Idaho State University.

3. **§ 10. State University—Location, regents, and lands.—** The location of the University of Idaho, as established by existing laws, is hereby confirmed. All the rights, immunities, franchises, and endowments, heretofore granted thereto by the territory of Idaho are hereby perpetuated unto the said university. The regents shall have the general supervision of the university, and the control and direction of all the funds of, and appropriations to, the university, under such regulations as may be prescribed by law. No university lands shall be sold for less than ten dollars per acre, and in subdivisions not to exceed one hundred and sixty acres, to any one person, company or corporation.

cy. The record before us demonstrates that in the instant case it was BRM and not ISU that ultimately paid for the defense and settlement of the Hale claim. Consequently, in the absence of a showing by ISU that it has suffered a loss as contemplated by the language of the insurance policy, the University has no claim upon which it can recover from Continental.

Because ISU has not suffered a loss as defined in the policy, no duty on Continental's part requiring it to indemnify ISU has arisen, and it was error for the trial court to grant summary judgment against Continental in this regard. The trial court should have granted Continental's motion for summary judgment dismissing ISU's claim.

The parties raise other issues on appeal including: whether the "other insurance" clause contained in the Continental policy was triggered by operation of the BRM's retained risk account; whether Continental is entitled to a set off for the settlement amount BRM received from Compass; and whether the Lamb–Weston rule as adopted in *Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 565 P.2d 564 (1977), is applicable to the facts of this case. In light of our ruling herein, it is not necessary that we address these other issues. While the resolution of these issues may become necessary in the event BRM can establish an equitable subrogation claim, we decline to address these issues at this juncture.

Accordingly, we vacate the summary judgment entered in favor of ISU and remand with instructions to enter judgment in accordance with this opinion.

Costs on appeal to Continental.

BAKES, C.J., and McDEVITT, J., concur.

JOHNSON, Justice, dissenting.

I respectfully dissent from the Court's opinion.

I.C. § 33–3001 established ISU, "consisting of such colleges, schools or departments as may from time to time be authorized by the state board of education [SBE]." I.C. § 33–3003 makes it plain that while ISU is "a body politic and corporate,

with its own seal and having power to sue and be sued in its own name," SBE supervises, governs, and controls ISU. SBE has all the rights and title to the property of ISU and has the power to insure this property. I.C. §§ 33–3005 and 33–3006(7). SBE is an executive department of state government. I.C. § 33–101.

BRM acted for ISU to acquire the Continental BEL policy (the policy). The policy was designed for issuance to school districts, not to institutions of higher education. The policy named ISU as the "School District." By endorsement, "School District" was defined in the policy to mean not only ISU, but also "its Governing Board." Contrary to the Court's opinion, the policy did not insure ISU but insured:

> All persons who were, now are or shall be employed by the School District and shall also include student teachers and all elected or appointed members of the Board of Education, Trustees or School Directors of the School District.

By this provision, the policy insured the members of SBE and the employees of ISU who were the defendants in the *Hale* litigation.

The Court's opinion erroneously focuses on whether ISU is a separate legal entity. The correct focus should be on the fact that SBE was insured under the policy. We should then move on to address the remaining issues in the case.

BISTLINE, J., concurs.