856 P.2d 1292

**SUN VALLEY RANCHES, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**PRAIRIE POWER COOPERATIVE, INC., an Idaho corporation, Defendant–Respondent.**

No. 19940.

Court of Appeals of Idaho.

Aug. 6, 1993.

Petition for Review Denied Aug. 27, 1993.

Roden & Arkoosh, Boise, for appellant. C. Thomas Arkoosh argued.

Rosholt, Robertson & Tucker, Boise, for respondent. Jerry V. Jensen argued.

WALTERS, Chief Judge.

This case asks whether a rural provider of electricity to a ranch for operation of

irrigation pumps could properly require a specific form of "adequate assurance" of payment as required in a court order, after the ranch had filed for bankruptcy. A second order of the bankruptcy court provided for the imposition of a crop lien as a security interest for the power company, but did not define its effect on the first order and was ignored by the power company. The dispute resulted in the filing of cross-motions for summary judgment. The district court granted summary judgment in favor of the provider of electricity, and the ranch appeals. We affirm.

### Facts and Procedural Background

For many years, plaintiff-appellant Sun Valley Ranches, Inc. (Sun Valley) operated a large farm on the Camas Prairie near Fairfield, Idaho. Due to increasing credit restrictions, Sun Valley was forced to file for Chapter 11 bankruptcy protection in 1983. When it filed, Sun Valley was receiving electrical power for irrigation through a contract with defendant-respondent Prairie Power Cooperative, Inc. (Prairie Power). Prairie Power is a small cooperative with about 200 customers, of which only twenty were large irrigators like Sun Valley. Although small in number, the irrigators used approximately 44% of Prairie Power's electrical output. If the irrigators did not pay their electrical bills every year, Prairie Power encountered a cash flow problem. In this case, Sun Valley carried into 1984 a debt of $12,000 to Prairie Power.

In April, 1984, Prairie Power moved the bankruptcy court to require Sun Valley to pay the $12,000 post-petition debt it owed and to post a $30,000 cash or security bond to provide adequate assurance of payment for power to be provided in 1984. The $30,000 figure was derived from the average of Sun Valley's electrical bills for the previous three years. On April 24, 1984, the bankruptcy court granted the motion and ordered Sun Valley, under 11 U.S.C. § 366 [1] to provide the $30,000 bond. The order stated that:

1. Pursuant to 11 U.S.C. 366(b), [Sun Valley] is hereby ordered to post a cash or security bond in the amount of $30,000 in order to provide adequate assurance of payment for future electrical service;

2. If said bond is not posted with Prairie Power Cooperative it is hereby authorized to refuse to provide electrical service to [Sun Valley].

Sun Valley was unable to post the $30,000 bond. As an alternative, on May 23, 1984, it moved the bankruptcy court, under 11 U.S.C. § 364(c)(2) [2], to allow Sun Valley to "incur secured debt" and impose a "super priority" lien for $276,000 against crops produced that year, for the benefit of those who supplied material and labor. Prairie Power was to be allowed a $50,000 lien against the crops for electricity. At the hearing on the motion, Prairie Power objected to the lien approach and stated its preference for a bond. The bankruptcy court granted Sun Valley's motion, and issued an order which simply stated:

that Debtor's Amended Motion to incur secured debt is granted in accordance

1. 11 U.S.C. § 366 provides:
Utility service
(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of deposit or other security, for service after such date. On request of a party in interest and after notice

and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

2. 11 U.S.C. § 364(c)(2) states:
(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
....
(2) secured by a lien on property of the estate that is not otherwise subject to a lien.

with and for the purposes enumerated in Exhibit A attached hereto.

Exhibit A merely listed the items supplied, their dollar equivalents, and to whom money would be owed. The order did not comment on its effect on the first order, and did not refer to "adequate assurances" or to 11 U.S.C. § 366.

Thereafter, Sun Valley requested that Prairie Power turn on the electricity. Prairie Power refused, insisting that the bond be produced. In July, 1984, Prairie Power turned on the power after Sun Valley furnished a bond by drawing a check on funds it held as cash collateral for another creditor, a violation of the bankruptcy code. According to Sun Valley, the delay in receiving power resulted in losing the season's crops, and damages were estimated at $263,658.50.

In May, 1986, Sun Valley filed an action against Prairie Power in state district court, seeking to recover damages. Initially, the district court granted Prairie Power's motion for summary judgment and dismissal holding that the court lacked jurisdiction to hear an issue regarding a violation of an order of the bankruptcy court. Sun Valley appealed to this Court. We vacated the dismissal, holding that the district court had concurrent jurisdiction with the bankruptcy court because the complaint asserted a claim for breach of contract under state law. *See Stevenson v. Prairie Power Co-op., Inc.*, 118 Idaho 52, 794 P.2d 641 (Ct.App.1989). The Idaho Supreme Court granted review and concurred with our decision to vacate the dismissal and to remand for further consideration. *See Stevenson v. Prairie Power Co-op., Inc.*, 118 Idaho 31, 794 P.2d 620 (1990). On remand, a trial resulted in a hung jury. The parties filed cross-motions for summary judgment and the district court granted Prairie Power's motion while denying Sun Valley's. Sun Valley appeals that decision.

In the meantime, Sun Valley's Chapter 11 bankruptcy proceeding was dismissed on May 20, 1985, the bankruptcy court vacated the May 29, 1984 crop lien order, and Sun Valley entered a Chapter 12 bankruptcy reorganization which has been idled pending this appeal.

## Standard of Review

Here, the district court determined that granting Prairie Power's cross-motion for summary judgment was appropriate because the pleadings, depositions, affidavits, and admissions on file established that there was no genuine issue of material fact and Prairie Power was entitled to judgment as a matter of law. I.R.C.P. 56(c); *State v. Continental Casualty Co.*, 121 Idaho 938, 939–40, 829 P.2d 528, 529–30 (1992). That determination presents a question of law over which we exercise free review.

## Analysis

The parties rest their discussion on the same facts, but disagree as to how the issue should be framed. Sun Valley argues that its contract with Prairie Power determined their rights and obligations and the bankruptcy court's orders "merely determined what adequate protection would be required to trigger those rights and obligations." Sun Valley asserts that the district court wrongly focused on whether Prairie Power had 'violated' the bankruptcy court orders instead of the duty that already existed because of the contractual relationship between the parties. According to Prairie Power, however, the two orders issued by the bankruptcy court defined the obligations of the parties, and the question presented is whether the second order was a mandatory modification of the first, or merely an alternative Prairie Power could consider at its option.

First, Sun Valley asserts that our holding in *Stevenson* established "the law of the case" from which the district court erroneously diverged. In *Stevenson*, we were presented with the question of whether the district court erred when it dis-

missed Sun Valley's claim on the grounds that it was without jurisdiction to hear the dispute. We concluded that the breach of contract claim was a matter over which the state court had concurrent jurisdiction with the bankruptcy court. We stated:

> In its complaint, Sun Valley alleged that Prairie Power had a duty to supply electrical power and deliberately failed to do so, thus causing damages to the irrigator's crops. The complaint asserts, in essence, a breach of contract claim for Prairie Power's failure to provide Sun Valley with adequate power to operate its irrigation system. The complaint does not specifically aver that Prairie Power had violated a bankruptcy court order; rather, it alleges damages arising from Prairie Power's refusal to supply power for the 1984 irrigation season. Although Prairie Power asserts that only the bankruptcy court had jurisdiction to hear and decide questions arising from the interpretation of its own orders, we conclude that, given the nature of the parties' contractual relationship, such a claim addresses a question of contract law properly framed for review in either federal or state court [citation omitted].
>
> . . . .
>
> Furthermore, we cannot agree with Prairie Power's assertion that, because the bankruptcy court's second order affected Sun Valley's bankruptcy estate, the federal court is vested with exclusive jurisdiction to decide this matter. 28 U.S.C.A. § 1334(d). Sun Valley's claim against Prairie Power only tangentially affects its estate; it does not encompass any of the property included in the estate, but rather serves to determine whether Sun Valley is entitled to damages for Prairie Power's alleged failure to supply power for irrigation during the 1984 growing season. In reaching our conclusion, we voice no opinion as to the merits of Sun Valley's claim, only that it should be permitted to advance its claim in state district court.

The doctrine of the law of the case provides that:

> where an appellate court states a principle of law in deciding a case, that rule becomes the law of the case and is controlling both in the lower court and on subsequent appeals as long as the facts are substantially the same. *Office of State Eng'r v. Curtis Park Manor*, 101 Nev. 30, 692 P.2d 495, 497 (1985). The decision on an issue of law made at one stage of a proceeding becomes precedent to be followed in successive stages of that same litigation.

*Frazier v. Neilsen*, 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct.App.1990). The doctrine is well established in Idaho and is limited to the appellate court's legal pronouncements and holdings necessary to decide the particular issue presented. *See Suitts v. First Security Bank of Idaho, N.A.*, 110 Idaho 15, 21–22, 713 P.2d 1374, 1380–81 (1985). It is similar to the doctrine of stare decisis, which requires that a statement of law be necessary to the ultimate disposition of the case in order to be binding on the lower courts. *See Petersen v. State*, 87 Idaho 361, 393 P.2d 585 (1964); *see also City of Weippe v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974). Otherwise, the statement is considered to be dictum and not controlling. Like stare decisis, the "law of the case" protects against relitigation of settled issues and assures that inferior courts will follow the decisions of superior courts. *Frazier*, 118 Idaho at 106, 794 P.2d at 1162.

■ The law of the case in *Stevenson* established that the state court had concurrent jurisdiction to hear Sun Valley's breach of contract claim. Our statement that the complaint did not specifically aver that Prairie Power violated a bankruptcy court order merely describes the case as presented by Sun Valley. Our statement did not denigrate Prairie Power's ability to argue, or the district court's ability to agree, that the dispute addressed a violation of a court order which had been judicially imposed as a condition to the contract. Our statements that Sun Valley's claim "only tangentially" affected its es-

tate, did not encompass any of the property included in the estate, and served to determine whether Sun Valley is entitled to damages, were necessary to establish jurisdiction. However, they were not directives for the district court to ignore bankruptcy law as it has been acknowledged by the parties to modify their contract rights.

The contractual relationship between the parties was straightforward. Prairie Power is an Idaho cooperative formed under the Rural Electrification Act, 7 U.S.C. § 901 et seq., for the purpose of providing its members with electrical power. Sun Valley was a member of the cooperative. The contract between the two essentially provided that Sun Valley would pay for electrical power provided by Prairie Power.

■ Once Sun Valley filed for relief in bankruptcy, the bankruptcy court obtained original and exclusive jurisdiction over the property within Sun Valley's estate, including its legal and equitable interests. 28 U.S.C. § 1334(d); 11 U.S.C. § 541(a)(1); In re Hobbs, 90 I.B.C.R. 388, 390 (contractual interests are property of the estate). Even so, the bankruptcy court did not enjoy exclusive jurisdiction for all civil proceedings arising in, under, or related to the bankruptcy proceedings. *Stevenson*, 118 Idaho at 57, 794 P.2d at 646. In other words, the bankruptcy court enjoyed concurrent jurisdiction with the state district court over the breach of contract claim. However, this did not alter the fact the parties invoked 11 U.S.C. § 366 in proceedings before the bankruptcy court to require "adequate assurances" of payment on their contract for electricity.

At its core, Sun Valley's argument merely restates, in the converse, Prairie Power's argument, i.e., that the court orders defined the rights and obligations of the parties, but that the second order, the crop lien, was wrongly interpreted to be nonbinding. We find this assertion to be directly contradicted by Sun Valley's testimony before the district court. During the hearing on Sun Valley's motion requesting

the lien, Prairie Power objected and reminded the bankruptcy court that the cooperative already had an order requiring Sun Valley to post a $30,000 bond before power would be furnished. The court acknowledged the existence of the order, which prompted Sun Valley to respond:

> Well, we understand what [Prairie Power's] position is, and this certainly, *this order or this motion is not intended to reduce the position that they have pursuant to that previous order.* All this is allowing the debtor to substitute a [postpetition security interest] rather than a bond. *If they would agree to accept a post-petition security interest in the crop in order for them to turn on the power, then we are able to do that.* If they won't accept that, then we will have to find some other method by which we can get money to put up the bond and there may be some way to do it. But the first item on Exhibit A has cash in the amount of $35,000. Mr. Ardiak (phonetic) is willing to advance a certain amount of cash as a purchaser of the hay in advance and take his position. We may be able to juggle with Prairie Power there in some respects, and put up some cash and some post-petition security interest. (Emphasis added.)

This passage seems to indicate that Sun Valley hoped to reduce its cash outlay for the bond by combining it with a secured interest in crops, if Prairie Power would agree to the arrangement. Prairie Power did not agree and responded:

> Your Honor, we are really very much concerned about the entire operation which already has administrative expenses that we incurred that has not been paid since they filed the petition, approximately $12,000. Prairie Power is a very small cooperative. This is frankly one of our biggest accounts up in the Camas prairie, and so it is kind of putting us in between a rock and a hard spot. If we don't go ahead and operate, get some money, we are financially in a bind on our own behalf. We would still want the bond, the cash bond posted....

Thereafter, Sun Valley acknowledged that it understood that Prairie Power would have to be paid in cash, unless it waived that condition, before Sun Valley could obtain a confirmed plan in bankruptcy. The court then granted Sun Valley's motion, after recognizing that everyone supplying material or labor would obtain equal first liens on the crop, and agreeing with Prairie Power that the crop proceeds should be disbursed by a third party.

■ The rules of construction applicable to contracts and written documents apply to the interpretation of court orders. *Suchan v. Suchan*, 113 Idaho 102, 106, 741 P.2d 1289, 1294 (1987). Interpretation of an unambiguous order of a court presents a question of law over which we exercise free review. *Id.* Here, neither order is ambiguous. The second order, if intended to be a mandatory modification of the first order, had a conspicuous absence of necessary language. It was an order granting a motion to incur a secured debt under 11 U.S.C. § 364(c)(2). It did not describe any effect it was to have on the first order, such as superseding that order, and no reference was made to "adequate assurances" or 11 U.S.C. § 366. By its lack of specificity, the second order appears to have simply provided participation in the crop lien up to $50,000, if Prairie Power opted to turn on the power without first receiving $30,000. The burden was on the movant Sun Valley to obtain relief from the first order. That burden was not met, and the relief granted in the second order failed to alter Prairie Power's rights under the first order.

We note that the second order was "set aside, as quashed" by the bankruptcy court on September 27, 1985, over one year after Prairie Power's alleged violation. The bankruptcy court had ample time, after the alleged violation and during the effective time of the order, to design a remedy or to sanction Prairie Power for its failure to comply with the second order. Instead, Sun Valley's bankruptcy petition was dismissed, for a variety of reasons, and no remedies or sanctions were awarded to Sun Valley for alleged wrongs by Prairie Power.

### Conclusion

The decision of the district court is affirmed. Costs to respondent, Prairie Power. No attorney fees on appeal were requested.

SWANSTROM, J.,* and WESTON, J., Pro Tem., concur.

---

* SWANSTROM, J., concurred prior to his resignation on July 31, 1993.