868 P.2d 510

**INTERMOUNTAIN GAS COMPANY, Plaintiff–Appellant,**

v.

**INDUSTRIAL INDEMNITY COMPANY OF IDAHO, an Idaho corporation, Defendant–Respondent.**

No. 20029.

Court of Appeals of Idaho.

Jan. 27, 1994.

Petition for Review Denied March 9, 1994.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. Richard C. Fields and Grant T. Burgoyne argued.

Quane, Smith, Howard & Hull, Boise, for respondent. Robert C. Moody argued.

SUBSTITUTE OPINION

The Court's prior opinion dated November 9, 1993, is hereby withdrawn.

**184**

WALTERS, Chief Judge.

This appeal addresses an insurer's obligation to defend and indemnify an insured under a policy covering negligent acts performed in the insured's administration of its employee benefit programs. The insured, Intermountain Gas Company (Intermountain), was sued by an employee, Armida Metcalf, who alleged that employees of Intermountain had demoted her to deprive her of employee benefits because of her use of sick leave. Industrial Indemnity Company (Industrial), Intermountain's insurer, refused to defend Intermountain against the claims, a decision Intermountain later challenged in district court. The district court granted summary judgment for Industrial and denied a similar cross-motion filed by Intermountain. We affirm.

### Facts and Procedural Background

We glean the following facts from the briefs on appeal and from *Metcalf v. Intermountain Gas Company*, 116 Idaho 622, 778 P.2d 744 (1989). In 1979, Armida Metcalf was hired by Intermountain to work in its Hailey office as an office clerk. In 1984 and 1985, she used substantial amounts of her sick leave due to two surgeries but never exceeded the amount of sick leave she had accrued. During these years, she had been told by employees at Intermountain that she was using more sick leave than the company average and should bring her absences in line with the rest of the company. The Hailey office employed seven people, including one other clerk who also took substantial amounts of sick leave during this time and who ultimately retired in 1986. According to the officer manager, the absences of the two clerks created serious problems for the office.

In June, 1986, Intermountain hired a younger, less experienced part-time clerk to replace the retiring clerk. The new clerk was elevated to full-time status in August. In the meantime, Metcalf was demoted from full to part-time, in part because of her use of sick leave. In September, 1986, her employment was further reduced to two hours per day, substantially reducing her income and employee benefits such as sick leave, medical insurance, and retirement benefits. She resigned soon thereafter.

In August, 1986, Metcalf filed charges with the Idaho Human Rights Commission, alleging age and sex discrimination. The Commission found no probable cause to believe that illegal discrimination occurred, but felt that Intermountain "acted unwisely in penalizing Ms. Metcalf for her legitimate use of accrued sick leave," constituting a violation of its own policy representation to its employees. Also in August, 1986, Metcalf filed an action in federal district court in Idaho. She alleged age and sex discrimination based on the observation that a younger, less experienced female had been promoted before Metcalf, and that a male employee who also had used substantial amounts of sick leave was not penalized for his absence. Metcalf also alleged breach of contract by demotion and breach of a covenant of good faith and fair dealing in her employment contract by: (a) demotion; (b) refusing to reinstate her but promoting a younger, less experienced woman; (c) harassing her by falsely accusing her of leaving her job early; and (d) intentionally and maliciously resisting her claims for unemployment benefits after she was terminated. The federal litigation was stayed, and the litigation was transferred to state court in January, 1987. The state court subsequently granted a partial summary judgment to Intermountain dismissing Metcalf's claims of breach of contract and breach of a covenant of good faith and fair dealing. On appeal, the Idaho Supreme Court reversed after determining that a triable issue of fact precluded granting summary judgment on the breach of contract claim. It also held, for the first time, that a covenant of good faith and fair dealing applied in employment contracts. *See Metcalf*, 116 Idaho 622, 778 P.2d 744. The dispute was finally resolved in 1991 when Intermountain settled Metcalf's claims.

During 1986, when Intermountain demoted Metcalf, it had a policy of insurance with Industrial covering liability for the negligent administration of Intermountain's employee-benefits programs. When Metcalf filed her action in federal district court, Intermountain tendered a copy of the complaint to Industri-

al, thereby providing Industrial with notice of the claims. On October 30, 1986, Industrial responded by denying coverage and refusing to defend Intermountain. Intermountain proceeded to defend itself. After settling with Metcalf, Intermountain demanded that Industrial indemnify Intermountain and pay its attorney fees. Industrial refused, and in December, 1991, Intermountain filed its complaint in this action. The parties submitted cross-motions for summary judgment. The district court granted Industrial's motion and denied Intermountain's cross-motion, prompting this appeal by Intermountain.

## Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *State v. Continental Casualty Co.*, 121 Idaho 938, 939–40, 829 P.2d 528, 529–30 (1992). The fact that both parties move for summary judgment does not, by itself, establish that there is no genuine issue of material fact. *Kromrei v. Aid Insurance Co. (Mutual)*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986); *Casey v. Highland Insurance Co.*, 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979). Here, however, the parties filed cross-motions for summary judgment based on the same evidentiary facts and the same issues and theories. They have effectively stipulated that there is no genuine issue of material fact, that the question presented can be answered as a matter of law, and that summary judgment is therefore appropriate. *Kromrei, supra; Williams v. Computer Resources, Inc.*, 123 Idaho 671, 851 P.2d 967 (1993).

## Analysis

The duty to defend is not coextensive with the duty to pay damages. *Standlee v. St. Paul Fire & Marine Insurance Co.*, 107 Idaho 899, 901, 693 P.2d 1101, 1103 (Ct. App.1984). "If a complaint alleges facts which, if true, create a potential liability within coverage of a liability insurance policy, the insurer has an initial duty to defend." *Id.; Pendlebury v. Western Casualty &*

*Surety Co.*, 89 Idaho 456, 464, 406 P.2d 129, 134 (1965). As succinctly stated by the court below: "the duty to defend is defined by the scope of the claims, not their validity." The claims alleged in the complaint are to be read broadly to determine if, in whole or in part, they "reveal a potential liability that would be covered by the insured's policy." *County of Kootenai v. Western Casualty and Surety Co.*, 113 Idaho 908, 910, 750 P.2d 87, 89 (1988). Because an insurance policy is a contract, the rights and remedies of parties to an insurance contract are determined by the terms contained therein. *Continental Casualty*, 121 Idaho at 939–40, 829 P.2d at 529–30.

We note that insurance policies are contracts of adhesion which ordinarily are not subject to negotiation between the parties, and any ambiguity must be construed strongly against the insurer. *Kromrei*, 110 Idaho at 551, 716 P.2d at 1323; *Moss v. Mid–American Fire and Marine Insurance Co.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982). When construing such contracts, a construction will not be favored that will defeat the purpose or object of the insurance. *Nielsen v. Provident Life and Accident Insurance Co.*, 100 Idaho 223, 226, 596 P.2d 95, 98 (1979). On the other hand, an insurance policy will be construed to provide full coverage of indicated risks, *Erikson v. Nationwide Mutual Insurance Co.*, 97 Idaho 288, 292, 543 P.2d 841, 845 (1975), but not to create a liability unassumed by an insurer under the terms of the policy. *Lively v. City of Blackfoot*, 91 Idaho 80, 85, 416 P.2d 27, 32 (1966). When construing an insurance policy, the intent of the parties is to be determined from the language of the contract itself and in the absence of ambiguity, coverage must be determined according to the plain meaning of the words employed. *Juker v. American Livestock Insurance Co.*, 102 Idaho 644, 645, 637 P.2d 792, 793 (1981); *Aid Insurance Company v. Armstrong*, 119 Idaho 897, 900, 811 P.2d 507, 510 (Ct.App.1991).

In the "employee benefits liability" policy at issue in this case, Industrial agreed to provide the following coverage:

To pay on behalf of the Insured all sums which the insured shall become legally ob-

ligated to pay as a result of damages sustained by an employee, prospective employee or the beneficiaries or legal representatives thereof and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs defined herein, and the Company shall have the right and duty to defend any suit against the Insured seeking such damages, even if such suit is groundless, false or fraudulent, . . . .

Excluded from coverage were "any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation," as well as "failure of performance of contract by any Insurer, including failure of any Employee Benefit Program" or "the Insured's failure to comply with any law concerning Worker's Compensation, Unemployment Insurance, Social Security or Disability Benefits." The policy defined employee benefit programs to include:

> group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance and travel, savings or vacation plans.

The term "administration" was defined to mean:

> (1) giving counsel to employees with respect to the Employee Benefit Programs;
>
> (2) interpreting the Employee Benefit Programs;
>
> (3) handling of records in connection with the Employee Benefit Programs;
>
> (4) effecting enrollment, termination or cancellation of employees under the Employee Benefit Programs;
>
> provided all such acts are authorized by the Named Insured.

Metcalf presented essentially identical claims in her complaints filed in state and federal court. Her claims were: age and sex discrimination; breach of contract by demotion; breach of the implied covenant of good faith and fair dealing in her employment contract by (a) demotion; (b) refusing to reinstate her but promoting a younger, less experienced woman; (c) harassing her by falsely accusing her of leaving her job early; (d) intentionally and maliciously resisting her claims for unemployment benefits after she was terminated.

■ Here, neither party has contended that the terms of the policy are ambiguous. By the terms of the policy, Industrial was not obligated to defend Intermountain against any claims of discrimination. The policy confines coverage to negligent acts, errors or omissions, but does not articulate an exclusion for intentional acts. Based on the maxim that "the inclusion of one is the exclusion of another" ("inclusio unius est exclusio alterius"), we agree with the district court that the policy was intended to provide coverage for negligent acts only, and exclude coverage for intentional acts. *See* BLACK'S LAW DICTIONARY 763 (6th ed. 1990); *Koon v. Bottolfsen,* 66 Idaho 771, 775, 169 P.2d 345, 346 (1946) (applying the maxim in the context of statutory construction). *See also Industrial Risk Insurers v. New Orleans Public Service, Inc.,* 666 F.Supp. 874, 880 (1987); *Hemphill v. Home Insurance Co.,* 121 Ga. App. 323, 458, 174 S.E.2d 251, 258 (1970); *McGuire v. State Farm Fire and Casualty Co.,* 175 So.2d 838, 841 (La.App.1965); *International Security Life Insurance Co. v. Arant,* 463 S.W.2d 523, 526 (Tex.App.1971) (recognizing application of the maxim to insurance policies).

With this perspective, we agree with the district court that intentionally demoting Metcalf was not an act for which Industrial was required to provide coverage. This conclusion also applies to Intermountain's acts which Metcalf claimed breached the implied covenant of good faith and fair dealing: refusing to reinstate her, harassing her, and "maliciously" resisting her claims for unemployment benefits after she was terminated.

Intermountain, however, alleges that Metcalf's claim of breach of her employment contract is linked to the administration of her employment benefit programs such as her health insurance, sick leave, and pension plan. Intermountain correctly notes that the policy defines administration of the benefit programs to include counseling regarding the

programs, interpretation of the programs, and enrollment, termination or cancellation of employees under the programs. The Supreme Court in *Metcalf* viewed the case as one in which Intermountain afforded her a generous sick-leave benefit on one hand and then allegedly *penalized* her for using it on the other.[1] Intermountain claims that this punishment was a misinterpretation resulting in the termination of her sick-leave benefits. Based on this premise, Intermountain concludes that Industrial was responsible to provide coverage.

We disagree. First, Metcalf's claims are primarily claims of discrimination, which are excluded from coverage. Further, it was the intentional act of demoting Metcalf that caused the harm, not the negligent interpretation of her benefits. Metcalf claimed that her reduction in hours was "motivated by a purpose to punish her for being ill and taking sick leave." When demoting Metcalf, Intermountain employees did not assert that the company's sick-leave policy failed to afford her the leave she had taken, but instead that she had exceeded the company average for absences. As punishment, Metcalf alleged, employees drastically reduced her hours of employment with the intent to deprive her of benefits under the sick-leave plan. By definition, punishment is an intentional act, not a negligent one.

The few cases from other jurisdictions discussing similar issues all have determined that intentional acts akin to those presented in the instant case are not covered under policies identical to that issued by Industrial. In *Lapeka, Inc. v. Security National Insurance Co., Inc.*, 814 F.Supp. 1540 (D.Kan. 1993), four employees had been fired by their employer. They proved to a jury that they were the victims of age discrimination but not that their employer had fired them for the purpose of interfering with their rights under a pension plan. Throughout the proceedings, the insured argued that the insurer had a duty to defend under an "Employee Benefit Programs Liability Endorsement" because the employees had alleged a loss of benefits such as sick leave, vacation, medical, and retirement plans. The court granted summary judgment in the insurer's favor. It agreed with the insurer's assertion that firing the employees was not administration of the benefits programs, and that, even if the terminations were encompassed by the term "administration," the employer's actions were intentional acts to cut costs, rather than "negligent" acts.

In *Katz Drug Co. v. Commercial Standard Insurance Co.*, 647 S.W.2d 831 (Mo.App. 1983), the appellate court interpreted another identical employee-benefits liability policy and held that the insurer was obligated under the policy to defend and indemnify the insured. In *Katz*, a retired employee's life insurance was cancelled without proper notification. He was deemed capable of having his insurance reinstated, but the company president refused the reinstatement because the same result would have been required for other employees. The court determined that the errors which prevented the employee from receiving proper notice were negligent and warranted coverage under the employee-benefits liability policy. However, the president's intentional refusal to reinstate the life insurance of the retired employee was an act excluded from coverage.

*Maryland Casualty Co. v. Economy Bookbinding Corporation Pension Plan and Trust*, 621 F.Supp. 410 (D.N.J.1985), presented another identical employee-benefits liability policy. There, the insurer brought an action for declaratory judgment to determine its obligation to defend or indemnify employee-pension plan officials in an action brought against them by beneficiaries of the plan. The court construed the term "administration" to mean "relatively routine, ministerial acts" performed in respect to the pension plan. Administration was held not to encompass "coverage of liability incurred in the decision-making and monitoring involved in

---

1. Addressing the breach of contract claim asserted by Metcalf against Intermountain which had been dismissed on summary judgment, the Court concluded that "a material issue of fact exists regarding whether, by providing for accumulated sick leave benefits, the employer impliedly agreed with the employee that the employment relationship would not be terminated or the employee *penalized* for using the sick leave benefits which the employee had accrued." 116 Idaho at 625, 778 P.2d at 747 (emphasis added).

managing the Plan's investments." The court granted summary judgment finding no obligation for coverage by the insurer because the following claims presented assertions of intentional acts: improper investment, failure to collect accounts receivable, disappearance of loans taken against life insurance policies, and failure to respond to pension plan beneficiaries' request for pension plan documents to which they had a right of access under federal law. Several claims required factual determinations which precluded summary judgment. Only one claim—failure to detect embezzlement—was determined to be a claim of negligence warranting summary judgment for the insured.

We hold that the allegation that Intermountain demoted Metcalf as punishment, with the intent to deprive her of defined benefits, was not an allegation of a negligent act for which Industrial contracted to provide coverage. Further, because the policy limited coverage to negligent acts, there is no basis to conclude that the parties intended to cover intentionally harmful acts. The alleged demotion was an intentional act for which the policy excluded coverage. Therefore, Industrial was not obligated to defend or indemnify Intermountain.

### Conclusion

We affirm the summary judgment granted to Industrial. Both parties have requested an award of attorney fees on appeal under I.C. § 12–120(3). As the prevailing party, costs and fees on appeal are awarded to the respondent, Industrial Indemnity Company. *See Clement v. Franklin Inv. Group, Ltd.,* 689 F.Supp. 1575 (D.Idaho 1988); *Twin Falls Livestock Comm'n v. Mid–Century Ins. Co.,* 117 Idaho 176, 786 P.2d 567 (Ct.App.1989).

SWANSTROM, J., Pro Tem., and SILAK, J., Acting Judge, concur.